UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DARIUS BURRIS,

                   Plaintiff,

          - against -

NASSAU COUNTY DISTRICT ATTORNEY,
NASSAU COUNTY POLICE, QUEENS
COUNTY DISTRICT ATTORNEY, NEW
YORK CITY POLICE, HEMPSTEAD
POLICE DEPARTMENT, DETECTIVE
DEZELIC, DETECTIVE GUBELLI,
LIEUTENANT BODEN, A.D.A. JOHN/JANE
DOE, DETECTIVE TZIMORATAS,
DETECTIVE PULEO, SERGEANT REILLY,
DETECTIVE J. DOE, P.O. MURPHY, P.O.
J. DOE, SERGEANT J. DOE, and
LIEUTENANT J. DOE,

                   Defendants.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**
14-CV-5540 (PKC) (GRB)

PAMELA K. CHEN, United States District Judge:

      Defendants Lieutenant Boden, Detectives Dezelic and Gubelli, the Nassau County Police, and the Office of the Nassau County District Attorney (collectively, "Defendants"), move to dismiss the Second Amended Complaint ("SAC") of Plaintiff Darius Burris, who is proceeding *pro se*.  For the reasons below, Defendants' motion is denied.

## BACKGROUND

### I.    Factual Background

The Second Amended Complaint alleges the following facts, which the Court accepts as true for purposes of this motion.  *See Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020).[1]

On April 25, 2014, Plaintiff was arrested following his discharge from the New York City Department of Corrections.  (*See* SAC, Dkt. 170, at ECF[2] 2–3.)  During the arrest, Plaintiff was wearing a back brace to treat fractured bones.  (*See id.* at ECF 3.)  An officer with the last name "Spattula"[3] "slamm[ed] Plaintiff while [his] hand[s] [were] cuffed, bringing Plaintiff to the ground." (*Id.*)  "This caused Plaintiff to be in excessive pain in [his] back, arms[,] and face." (*Id.*)  Spattula and other officers then "forced" Plaintiff into a car while his "arms [were] stretched high behind his back with his wrists tightened."  (*Id.*)  While in the car, Plaintiff "requested medical attention," at which point "the passenger seat was forced back by Det. Dezlic [*sic*] who sat in front of Plaintiff."  (*Id.*)  Plaintiff requested medical attention again "[w]hile [he] was processed," but he was "left in excessive pain[] until [the] process of [the] arrest was done."  (*Id.*)

---

[1] Unless otherwise noted, all legal citations in this Memorandum and Order omit any internal quotation marks, citations, brackets, ellipses, and footnotes.

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] This officer, spelled throughout Plaintiff's filings as "Spattula" (*see* Dkt. 170, at ECF 1, 2, 4; Dkt. 108, at ECF 3, 6), or "Spatula" (*see* Dkt. 108, at ECF 2), is not listed in the case caption as a defendant and has not appeared in this case.  The Clerk of Court is respectfully directed to add Officer Spattula to the case caption as a defendant.  Defense counsel is respectfully directed to notify the Court, within 30 days of this Order, whether their office represents Officer Spattula in this matter.  For the reasons below, Plaintiff has adequately stated excessive force and deliberate indifference claims against Officer Spattula.

After being "process[ed]," Plaintiff's "back brace was removed" and he was transferred to a medical facility where he received treatment. (*Id.*) He was then taken into custody at the county jail. (*Id.* at ECF 3–4.) There, he received medication and physical therapy for his back injury. (*Id.* at ECF 4.) Plaintiff suffered "back pain, head trauma, [and] numbness of [his] fingers and wrist." (*Id.* at ECF 5.)

## II.    Procedural Background

Plaintiff commenced this action, pursuant to 42 U.S.C. § 1983, on September 17, 2014, seeking damages for the alleged violations of his constitutional rights by Defendants in connection with his arrests on December 27, 2013, and April 25, 2014. (*See* Complaint, Dkt. 1.) On October 2, 2014, the Court granted Plaintiff's motion to proceed *in forma pauperis*. (*See* Dkt. 6.)

On December 17, 2014, the Court stayed this action pending resolution of Plaintiff's parallel criminal case in state court. (*See* Dkt. 20.) By letter filed on November 21, 2015, Plaintiff informed the Court that there had been a guilty verdict in his underlying criminal matter. (*See* Dkt. 37.) Plaintiff was sentenced on March 31, 2016. (*See* 03/31/2016 Docket Order.)

On March 29, 2017, the Court dismissed all of Plaintiff's claims except his excessive force claims against the New York City and Nassau County Defendants. *See Burris v. Nassau Cty. Dist. Att'y*, No. 14-CV-5540 (JFB) (GRB), 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017). In so doing, the Court adopted the Report and Recommendation of then-Magistrate Judge Gary R. Brown[4] in which Judge Brown explained:

> In the case at bar, plaintiff alleges that immediately upon his release from the New York City Department of Corrections on April 25, 2014, he was arrested by Nassau County detectives with respect to crimes related to stolen property. Burris also asserts that during the arrest, he suffered "excessive pain" when New York City police officers, with the assistance of several Nassau County detectives and Detective Dezelic, subjected him to excessive force by restraining his hands with

---

[4] Judge Brown is now a District Judge in this District.

3

handcuffs behind his back and simultaneously lifting his arms above his head. Burris states he complained to defendants that he was in "excessive pain," requested medical treatment, was taken to Nassau County Medical Center and later had to return a second time for treatment, and "a back brace was lost." Nothing in these allegations suggests that plaintiff posed an immediate threat to the safety of any of the officers or others or that Burris was trying to resist arrest when New York City police assisted Nassau County police with the arrest on charges of possession of stolen property.

*Burris v. Nassau Cty. Dist. Att'y*, No. 14-CV-5540 (JFB) (GRB), 2017 WL 9485714, at *14 (E.D.N.Y. Jan. 12, 2017), *report and recommendation adopted*, 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017).

On April 17, 2017, Plaintiff filed an Amended Complaint. (*See* Dkt. 108.) On January 21, 2021, the Court held a pre-motion conference, at which it granted Plaintiff permission to "file a Second Amended Complaint, providing additional facts, if any, regarding his remaining claims for excessive force and inadequate medical care." (*See* 01/21/2021 Minute Entry.) On March 9, 2021, the Court extended Plaintiff's deadline to file the SAC to April 9, 2021, and it advised Plaintiff that the SAC "should lay out the <u>detailed factual allegations</u> (not the legal conclusions) underlying his claims of **excessive force** and **inadequate medical care** against the Nassau County Defendants relating to his April 25, 2014 arrest." (03/09/2021 Docket Order.) On April 20, 2021, Plaintiff filed the SAC. (*See* SAC, Dkt. 170.)

On May 12, 2021, Defendants filed a letter opposing Plaintiff's request to amend, and seeking to dismiss the SAC. (*See* Defendants' Motion to Dismiss ("Def. Br."), Dkt. 171.) The Court construed Defendants' motion as a motion to dismiss (*see* 05/13/2021 Docket Order), which is now before the Court.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).  The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  In addressing the sufficiency of a complaint, a court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [it is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester County*, 3 F.4th 86, 90–91 (2d Cir. 2021).  Courts "construe a *pro se* complaint liberally to raise the strongest arguments it suggests." *Darby v. Greenman*, 14 F.4th 124, 127 (2d Cir. 2021).

## DISCUSSION

### I.     42 U.S.C. § 1983

Section 1983 "does not confer any substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Village of Freeport v. Barrella*, 814 F.3d 594, 600 n.8 (2d Cir. 2016).  "To state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014).

### II.    Excessive Force

Defendants first move to dismiss Plaintiff's excessive force claim.

A.     **Legal Standard**

In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court "concluded that where a claim for excessive force 'arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment.'" *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) (quoting *Graham*, 490 U.S. at 394). "It is therefore analyzed under the Fourth Amendment's reasonableness standard, rather than under the subjective substantive due process approach, which requires consideration of whether the individual officers acted in good faith or maliciously and sadistically for the very purpose of causing harm." *Id.* "Because the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, determining whether the amount of force an officer used is reasonable requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.*

"The proper application of the reasonableness standard, according to the *Graham* Court, 'requires careful attention to the facts and circumstances of each particular case, including' (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether the suspect is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396). "[T]he reasonableness inquiry is an objective one." *Id.* "It requires a court to view officers' actions in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation or the 20/20 vision of hindsight." *Id.* "*Graham* thus stands for the proposition that a government officer may not intrude on a person's Fourth Amendment rights by employing a degree of force beyond that which is warranted by the objective circumstances of an arrest." *Id.* "[T]he objective reasonableness standard established in *Graham* applies to actions taken with respect to a person

who asserts . . . a claim for excessive force after [he] has been arrested and detained, but prior to the time when [he] is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer." *Id.*

"[E]xcessively tight handcuffing that causes injury can constitute excessive force in violation of the Fourth Amendment . . . ." *Shamir v. City of New York*, 804 F.3d 553, 557 (2d Cir. 2015) (collecting cases). In considering whether handcuffing an arrestee "constitute[s] excessive force in violation of the Fourth Amendment," courts consider whether "(1) the arrestee's handcuffs were unreasonably tight; (2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the arrestee's wrists." *Cugini*, 941 F.3d at 612. But although "[t]hese evidentiary factors may, indeed, prove useful to a district court in assessing the soundness of a handcuffing-based excessive force claim, . . . [t]he test of reasonableness under the Fourth Amendment . . . is not capable of precise definition or mechanical application." *Id.* at 613. "A court's reasonableness analysis is not limited to a factual checklist; it must instead be guided by a careful balance between the nature and quality of the intrusion and the countervailing government interests at stake under the circumstances." *Id.*

"Thus[,] a plaintiff asserting a claim for excessive force need not always establish that [he] alerted an officer to the fact that [his] handcuffs were too tight or causing pain." *Id.* "The question is more broadly whether an officer reasonably should have known during handcuffing that his use of force was excessive." *Id.* "A plaintiff satisfies this requirement if either the unreasonableness of the force used was apparent under the circumstances, or the plaintiff signaled [his] distress, verbally or otherwise, such that a reasonable officer would have been aware of [his] pain, or both." *Id.* "[A]s with all aspects of a Fourth Amendment inquiry, an officer's awareness is judged from the perspective of a reasonable officer on the scene." *Id.* "[W]here an officer's use of force in

handcuffing is plainly unreasonable under the circumstances *or* where a plaintiff manifests clear signs of [his] distress—verbally or otherwise—a fact finder may decide that the officer reasonably should have known that his use of force was excessive for purposes of establishing a Fourth Amendment violation." *Id.*

"[T]ight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008). "The most common injuries found to satisfy the injury requirement in handcuff cases are scarring and nerve damage." *Usavage v. Port Auth. of N.Y. & N.J.*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013).

### B.   Plaintiff Adequately Pleads Excessive Force

In their motion, Defendants argue that

> Plaintiff's second amended complaint is completely devoid of any detail regarding his claims of excessive force and inadequate medical treatment. Rather, Plaintiff's amended pleading "tenders nothing more than 'naked assertions' devoid of 'further factual enhancement'" and as such must be dismissed. Plaintiff's claims are nothing more than conclusory allegations that are insufficient to raise a right to relief.

(Def. Br., Dkt. 171, at ECF 1 (citations and brackets omitted).)

But construing the SAC liberally, Plaintiff adequately alleges that (1) his handcuffs were unreasonably tight, insofar as they caused him excessive pain and wrist numbness; (2) Defendants ignored Plaintiff's pleas for medical attention while he was in the car; and (3) Plaintiff suffered injuries requiring immediate medical treatment and physical therapy, including "back pain, head trauma, [and] numbness of [his] fingers and wrist." (SAC, Dkt. 170, at ECF 2–5); *see Cugini*, 941 F.3d at 612. As Judge Brown explained with respect to a prior iteration of Plaintiff's complaint, "[n]othing in these allegations suggests that [P]laintiff posed an immediate threat to the safety of any of the officers or others or that [he] was trying to resist arrest." *See Burris*, 2017 WL 9485714,

8

at *14.  Because the SAC includes similar excessive force allegations to those that survived the previous motion to dismiss, Plaintiff's excessive force claim may proceed.

## III.  Deliberate Indifference to Medical Needs

Defendants also move to dismiss Plaintiff's claim for inadequate medical treatment, which the Court allowed Plaintiff to add in the SAC.  (*See* 03/09/2021 Docket Order.)

### A.  Legal Standard

In *Estelle v. Gamble*, 429 U.S. 97 (1976), "the Supreme Court held that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care."  *Darby*, 14 F.4th at 128 (quoting *Estelle*, 429 U.S. at 104–05).  "The Court subsequently extended the protections for convicted prisoners established in *Estelle* to pretrial detainees under the Due Process Clause of the Fourteenth Amendment, reasoning that 'the due process rights of a person [detained but not convicted] are at least as great as the Eighth Amendment protections available to a convicted prisoner.'"  *Id.* (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions."  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  "This means that a pretrial detainee must satisfy two prongs to prove a claim, an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong'—perhaps better classified as a '*mens rea* prong' or 'mental element prong'—showing that the officer acted with at least deliberate indifference to the challenged conditions."  *Id.*  In this context, "the term 'subjective prong' might be a misleading description,"

9

*id.*, because a detainee "can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health," *Darby*, 14 F.4th at 128.

### B.    Plaintiff Adequately Pleads Deliberate Indifference

In reviewing Plaintiff's claim for inadequate medical care, the Court is mindful that when "one of a number of integrally related causes of action have to be tried, it makes little sense to grant a motion to dismiss as [to] one or more of them, as it may prove necessary to hold yet another trial in the event that it is determined on appeal that the motion to dismiss was improperly granted." *Timmer v. City Univ. of New York*, No. 20-CV-2554 (PKC) (RLM), 2021 WL 3603465, at *17 (E.D.N.Y. Aug. 13, 2021).  As noted, Plaintiff adequately alleges that Defendants used excessive force during his arrest.  In light of that fact and viewing Plaintiff's Complaint liberally, the Court also permits his claim of inadequate medical treatment to proceed.

As discussed, Plaintiff alleges that when he was arrested, he was wearing a back brace to treat fractured bones.  (*See* SAC, Dkt. 170, at ECF 3.)  While in the car to the precinct, Plaintiff "requested medical attention," at which point "the passenger seat was forced back by Det. Dezlic [*sic*] who sat in front of Plaintiff."  (*Id.*)  Plaintiff requested medical attention again "[w]hile [he] was processed," but he was "left in excessive pain[] until [the] process of [the] arrest was done." (*Id.*)  After being processed, Plaintiff's "back brace was removed," and he was transferred to a medical facility where he received treatment.  (*Id.*)  He was then taken into custody at the county jail, where he received medication and physical therapy for his back injury.  (*Id.* at ECF 3–4.)

Although Plaintiff admits that he ultimately received some medical treatment, he adequately states a claim for deliberate indifference during his arrest and processing.  First, despite Plaintiff's wearing a back brace, Officer Spattula allegedly "slamm[ed] Plaintiff while [his]

hand[s] [were] cuffed, bringing Plaintiff to the ground," and the officers then "forced" Plaintiff into a car while his "arms [were] stretched high behind his back with his wrists tightened." (*Id.* at 3.)  Given that Plaintiff was wearing a back brace and recovering from fractured bones at the time, and because he ended up needing to go to the hospital and receive further treatment, he adequately pleads that his condition was sufficiently serious to satisfy the objective prong.  Second, because Plaintiff was wearing a back brace and repeatedly complained of pain and requested medical treatment, he adequately pleads that Defendants knew or should have known "that failing to provide the complained of medical treatment would pose a substantial risk to his health."  *Darby*, 14 F.4th at 128.  At the pleading stage, this satisfies the subjective prong.  Plaintiff's claim for inadequate medical treatment therefore may proceed.

**CONCLUSION**

For the reasons above, Defendants' motion to dismiss is denied.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 25, 2022
       Brooklyn, New York