UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
DARIUS BURRIS,

                            Plaintiff,

              - against -

NASSAU COUNTY DISTRICT ATTORNEY,
NASSAU COUNTY POLICE, DETECTIVE
DEZELIC, DETECTIVE GUBELLI, A.D.A.
JOHN/JANE DOE, DETECTIVE PULEO,
SERGEANT REILLY, DETECTIVE J. DOE,
P.O. MURPHY, P.O. J. DOE, SERGEANT J.
DOE, LIEUTENANT J. DOE, C.O.
SPATARELLA[1], and CAPTAIN JANE DOE,

                            Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
14-CV-5540 (PKC) (ARL)

PAMELA K. CHEN, United States District Judge:

          Plaintiff Darius Burris ("Plaintiff") brings this *pro se* action, pursuant to 42 U.S.C. § 1983

("Section 1983"), against, *inter alia*, Defendants Nassau County District Attorney, Nassau County

Police Department ("NCPD"), NCPD Detective Dezelic, NCPD Detective Gubelli, NCPD

Detective Nicolic, and NCPD Detectives John/Jane Does[2] (collectively, "Defendants"), alleging

violations of Plaintiff's constitutional rights in connection with his arrest that occurred on April

---

[1] Defendant C.O. Spatarella was identified in Plaintiff's complaints as "C.O. Spattla," "C.O. Spatula," or "C.O. Spattula."  (*See* Compl., Dkt. 1, at ECF 4; First Am. Compl. ("FAC"), Dkt. 108, at ECF 2; Second Am. Compl. ("SAC"), Dkt. 170, at ECF 1.)  He was later identified as New York City Department of Corrections ("NYCDOC") Officer Robert Spatarella.  (*See* Dkt. 181, at 1.)  On November 7, 2022, Defendant Spatarella moved to dismiss Plaintiff's excessive force claim (*see* Dkts. 189–90), which the Court denied on September 30, 2023 (*see* Dkt. 202). Defendant Spatarella has not moved for summary judgment.  Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[2] To date, Plaintiff has not identified or moved to substitute individuals as defendants in place of the two Doe defendants.  *See infra* Discussion Part I.B.1.

25, 2014.  Plaintiff specifically asserts claims of excessive force, deliberate indifference to medical needs, and deprivation of property.  Presently before the Court is Defendants' motion for summary judgment seeking dismissal of Plaintiff's SAC.[3]  For the reasons explained below, Defendants' motion is granted as to all claims and all Defendants, except as to the excessive force and deliberate indifference to medical needs claims against Detective Dezelic.[4]

## BACKGROUND

### I.  Procedural History

Plaintiff filed his original Complaint on September 17, 2014, asserting claims under Section 1983 for alleged violations of his constitutional rights by multiple defendants in connection with his arrests on two separate dates—December 27, 2013 and April 25, 2014.  (*See generally* Compl., Dkt. 1.)  On October 2, 2014, the Court granted Plaintiff leave to proceed *in forma pauperis*, and directed the United States Marshals Service to effect service on Plaintiff's behalf.[5]  (*See* Dkt. 6.)  Further on October 30, 2014, the Court issued an order, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (per curiam), requesting counsel for defendants in this action

---

[3] While Defendants purport to file the present motion also on behalf of NCPD Lieutenant Boden, who was formerly a defendant in this case, Plaintiff voluntarily withdrew his claims against Lieutenant Boden by removing him as a defendant in his SAC and "via phone request to Pro Se Clerk."  (*See* 4/20/2021 Docket Entry.)  Lieutenant Boden was, consequently, dismissed from this action on April 20, 2021, prior to the filing of the present motion.  (*See id.*)

[4] The Court notes that Detective Nicolic has not moved for summary judgment.  However, for the reasons discussed herein, he is being dismissed *sua sponte* from this action.  Additionally, although Plaintiff's SAC named Detective Nicolic as a defendant, he was not added to the case caption on the docket.  (*See* SAC, Dkt. 170, at ECF 1.)  Given that the parties have not moved to amend the caption, and that Detective Nicolic is being dismissed from this action, the Court has not ordered amendment of the case caption to include Detective Nicolic.

[5] At that time, the Honorable Joseph F. Bianco was the presiding district judge in this matter.

2

to "ascertain the full names of the individuals alleged to have interacted with [Plaintiff] on . . . April 25, 2014." (*See* Dkt. 7 ("*Valentin* Order"), at 2; 10/30/2014 Docket Order.) On December 17, 2014, in light of Plaintiff's then-ongoing parallel state criminal proceeding, the Court stayed this action. (*See* Dkt. 20 at 2–3.) By letter dated November 18, 2015, "[P]laintiff notified the court that there ha[d] been a guilty verdict in his underlying criminal matter." (12/2/2015 Docket Order; *see also* Dkt. 37.) Plaintiff was sentenced on that conviction in the spring of 2016. (*See* 3/30/2016 Docket Order; Dkt. 46, at 1.)

On March 29, 2017, the Court dismissed all of Plaintiff's claims in the original Complaint, except his excessive force claims against certain defendants stemming from his April 25, 2014 arrest, and granted him leave to file an amended complaint. *See Burris v. Nassau Cnty. Dist. Att'y*, No. 14-CV-5540 (JFB) (GRB), 2017 WL 9485714, *5–17 (E.D.N.Y. Jan. 12, 2017), *R. & R. adopted*, 2017 WL 1187709, at *2–3 (E.D.N.Y. Mar. 29, 2017). On April 17, 2017, Plaintiff filed the FAC alleging excessive force, inadequate medical care, and deprivation of property as to the current Defendants relating to his April 25, 2014 arrest. (*See* FAC, Dkt. 108, at ECF 3–6.) On January 21, 2021, this Court held a pre-motion conference ("PMC"), at which it granted Plaintiff permission to "file a Second Amended Complaint, providing additional facts, if any, regarding his remaining claims for excessive force and inadequate medical care." (*See* 1/21/2021 Minute Entry.) On April 20, 2021, Plaintiff filed the operative SAC. (*See* SAC, Dkt. 170.) On May 12, 2021, Defendants filed a letter opposing Plaintiff's request to amend. (*See* Dkt. 171, at 1.) The Court construed Defendants' letter as a motion to dismiss (*see* 5/13/2021 Docket Order), which the Court denied on March 25, 2022 (*see* Dkt. 175, at 1, 11).

On July 11, 2022, Defendants filed a PMC letter requesting to file a motion for summary judgment. (*See* Dkt. 182, at 1–2.) On August 29, 2022, the Court, being "mindful of the fact that

this case has been pending since 2014," denied Defendants' PMC request as unnecessary, granted them leave to file their motion, and reminded Plaintiff that he "shall serve his Opposition papers, and an opposing [Local Civil Rule 56.1 Statement ("Rule 56.1 Statement")] if the Local Rules so require, by November 17, 2022." (*See* 8/29/2022 Docket Order.)

On November 28, 2022, Defendants filed the instant motion for summary judgment and supporting papers, including their Rule 56.1 Statement.  (*See* Dkt. 192.)  Plaintiff filed his opposition papers to Defendants' motion for summary judgment on December 5, 2022, 18 days past the briefing deadline set by the Court.[6]  (*See* Dkt. 193.)  On the same day, Defendants filed a letter seeking to preclude Plaintiff's opposition submission as untimely.  (*See* Dkt. 194, at 1.)  The Court denied Defendants' request and permitted them to file a reply brief to Plaintiff's opposition. (*See* 1/3/2023 Docket Order.)  Defendants subsequently filed their reply brief in further support of their motion for summary judgment on January 17, 2023 (*see* Mem. of L. in Further Supp. of Defs.' Mot. for Summ. J. ("Defs.' Reply Br."), Dkt. 198), when motion briefing was completed.  (*See* Dkts. 192–93, 198.)

## II.   Plaintiff's Deficient Submissions

As a preliminary matter, the Court addresses the deficiencies in Plaintiff's submissions regarding the present motion.  First, in response to Defendants' motion, Plaintiff filed papers denoted as a motion for summary judgment.  (*See* Dkt. 193-2, at ECF 2.)  Upon review of the documents submitted by Plaintiff, it is clear that his papers are mislabeled.  Plaintiff specifically states in his papers that he wants the Court to "dismiss [Defendants'] motion" and "grant[] [his

---

[6] Plaintiff indicates in his opposition submission that he mailed out his opposition papers to the Court on November 14, 2022, but his mailing was returned on November 23, 2022 due to insufficient postage.  (*See* Dkt. 193-1, at ECF 1; *see also* Dkt. 194, at 1.)

SAC] to proceed to trial."  (Pl.'s Decl. in Opp'n of Defs.' Mot. for Summ. J. ("Pl.'s Opp'n"), Dkt. 193, at ECF 1; *see also id.* at ECF 5, 8–9.)  Plaintiff does not seek entry of judgment in his own favor.  (*See generally id.*)  "Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category." *Davis v. NYS Dep't of Corr. Attica Corr. Facility P.O. Box 149 Attica, N.Y. 14001*, 46 F. Supp. 3d 226, 237 (W.D.N.Y. 2014) (quoting *Castro v. United States*, 540 U.S. 375, 381 (2003)).  "Courts should recharacterize a *pro se* litigant's motion where it is necessary to protect the *pro se* litigant's rights." *Id.* (citing *Santiago v. Stamp*, 303 F. App'x 958, 961 (2d Cir. 2008) (summary order)).  "In this case, *pro se* Plaintiff plainly did not understand the function of serving [his] own motion for summary judgment and apparently believed it was the appropriate mechanism for opposing [Defendants'] motion." *Id.* at 237–38.  Thus, "[u]nder these circumstances and in the interest of protecting the rights of the *pro se* litigant, the Court construes Plaintiff's submission as [his] opposition to [Defendants'] motion rather than as a cross-motion for summary judgment." *Id.* at 238.

Second, Local Civil Rule ("Local Rule") 56.1 of this District requires, *inter alia*, that: (1) a party seeking summary judgment submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried" and (2) the opposing party submit a counterstatement ("Counterstatement") with "correspondingly numbered paragraph[s] responding to each numbered paragraph in the statement of the moving party[.]"  E.D.N.Y. Loc. Civ. R. 56.1(a)–(b).  "Each statement by the movant or opponent" in both the Rule 56.1 Statement and Counterstatement "must be followed by citation to evidence which would be admissible[.]"  Local Rule 56.1(d).  If the opposing party fails to submit an appropriate Counterstatement controverting facts set forth in the movant's Rule 56.1 Statement

by citing to admissible evidence, the court may deem the moving party's statements of fact to be admitted. *See* Local Rule 56.1(c)–(d); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.").

In this case, Plaintiff failed to submit a Counterstatement in response to Defendant's Rule 56.1 Statement as required under Local Rule 56.1. (*See generally* Pl.'s Opp'n, Dkt. 193.) As Defendants served Plaintiff with the requisite notice pursuant to Local Rule 56.2—which explains the summary judgment process to *pro se* litigants and the consequences of the failure to properly respond to the summary judgment motion—and attached copies of Federal Rule of Civil Procedure 56 and Local Rule 56.1 as required by the rules (*see* Dkts. 188, 192-9), the Court has "discretion to consider any properly supported facts in Defendants' [Rule 56.1 Statement] admitted[,]" *Thomas v. C.R. Bard, Inc.*, No. 20-CV-2738 (CS), 2022 WL 16748753, at *1 n.1 (S.D.N.Y. Nov. 7, 2022); *see also Vasquez v. Warren*, 630 F. Supp. 3d 524, 528 n.1 (S.D.N.Y. 2022) (noting that the court "could have regarded [the defendants'] version [of a Rule 56.1 Statement] as entirely undisputed" due to *pro se* plaintiff's failure to comply with Local Rule 56.1 even though the plaintiff had been given the required Local Rule 56.2 notice). Nevertheless, Plaintiff filed a declaration in opposition to Defendants' motion for summary judgment in which Plaintiff makes several statements about the facts of this case. (*See generally* Pl.'s Opp'n, Dkt. 193.) Recognizing that *pro se* litigants are entitled to "special solicitude . . . when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court will "in its discretion opt to 'conduct an assiduous review of the record'"—including Plaintiff's original Complaint, FAC, SAC, and opposition papers—in deciding the instant motion, *see Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (quoting *Monahan v. N.Y.C. Dep't of*

*Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000)); *see also Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Benefit Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 [S]tatement, the [c]ourt has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1."); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357 (ER), 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the *pro se*] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response). "The Court will therefore consider [and note] whether any facts in the record or in Plaintiff's Complaint, FAC, [] SAC, [and opposition papers,] contradict Defendants' 56.1 Statement[]." *Lebron v. Mrzyglod*, No. 14-CV-10290 (KMK), 2019 WL 3239850, at *2 n.4 (S.D.N.Y. July 18, 2019). "As to any facts not contained in Defendants' [Rule 56.1] Statement, in light of the procedural posture of this case, the Court is 'required to resolve all ambiguities and draw all permissible factual inferences' in favor of Plaintiff." *Maldonado v. Mandalaywala*, No. 17-CV-1303 (BKS) (TWD), 2020 WL 1159426, at *4 (N.D.N.Y. Feb. 12, 2020) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).[7]

---

[7] While Plaintiff's *pro se* submissions understandably suffer from deficiencies, Defendants' Rule 56.1 Statement is inexplicably confusing. It consists almost entirely of *Plaintiff's* factual allegations from the SAC, and contains almost no factual statements by Defendants and only three citations to evidence. (*See generally* Defs.' Rule 56.1 Statement, Dkt. 192-1 (setting forth 15 paragraphs of Plaintiff's factual allegations from the SAC and three paragraphs stating other facts based on records submitted with Defendants' motion).) This is contrary to what Local Rule 56.1 requires, which is a "concise statement . . . of the material facts *as to which the moving party contends there is no genuine issue to be tried*." Local Rule 56.1(a) (emphasis added). Based on Defendants' briefing, it appears that they included Plaintiff's complaint allegations in their Rule 56.1 Statement for two purposes: first, in order to argue that based on the "undisputed" evidence, i.e., Plaintiff's allegations, about the *NYCDOC* officers' conduct, no jury could find that *Defendants* caused Plaintiff any injury, and, second, in order to argue that even accepting as undisputed Plaintiff's allegations about Defendant Dezelic, his

### III.     Relevant Facts[8]

On April 25, 2014, Plaintiff was arrested by NCPD officers upon his discharge from the custody of the NYCDOC.  (*See* SAC, Dkt. 170, at ECF 2–3.)  At the time of the arrest, Plaintiff was wearing a back brace to treat his pre-existing fractured bones.  (*See id.* at ECF 3.)  Even before Plaintiff was released from NYCDOC custody, "C/O Spattula"[9] became verbally abusive towards Plaintiff and made "threats of bodily harm to the Plaintiff," and Spattula also "showed aggression" towards Plaintiff while he was being handcuffed by NCPD Detectives Jane Doe and John Doe. (*Id.*)  Plaintiff was then "slamm[ed]" to the ground by several unknown NYCDOC officers.  (*Id.*) This caused Plaintiff to be in "excessive pain in [his] upper/lower back, arms[,] and face."  (*Id.*) NCPD detectives then "force[d]" Plaintiff into a car while his arms were stretched high behind his back with his wrists tightened.  (*Id.*)  While in the car, Plaintiff "requested medical attention," at which point "the passenger seat was forced back by Det. Dezlic [*sic*] who sat in front of Plaintiff." (*Id.*; *see also* Pl.'s Opp'n, Dkt. 193, at ECF 7.)[10]  Detective Dezelic "refused to seek medical

---

conduct did not amount to excessive force.  (*See, e.g.*, Mem. of L. in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Br."), Dkt. 192-2, at 8–10.)  But the Court cannot treat as undisputed Plaintiff's allegations against the NYCDOC officers, since they are not participating in this motion briefing. And to the extent Defendants are assuming the truth of Plaintiff's allegations about Detective Dezelic for purposes of their argument, they could and should have done so simply by way of argument in their memorandum of law, and not by including Plaintiff's factual allegations in their Rule 56.1 Statement of *undisputed* facts.

[8] Because of the issues with Defendants' Rule 56.1 Statement discussed *supra*, the Court does not cite to it, but instead cites only to, *inter alia*, the underlying documents that Defendants cite therein, including, to the extent relevant, the SAC.

[9] As noted above, "C/O Spattula" was later identified as NYCDOC Officer Robert Spatarella.  (*See* Dkt. 181, at 1); *see supra* note 1.

[10] The Court liberally construes this allegation as stating that Plaintiff posed no risk of escape or any other unlawful conduct.

attention for [] Plaintiff" by "not ordering the co/conspirators to drive [] Plaintiff to a local hospital[.]"  (Pl.'s Opp'n, Dkt. 193, at ECF 7.)

Upon arriving at the NCPD precinct, Plaintiff requested medical attention again while being processed, but was left in "excessive pain" for several hours "until [the] process of [the] arrest was done."  (SAC, Dkt. 170, at ECF 3; *see* Pl.'s Opp'n, Dkt. 193, at ECF 4.)  After Plaintiff was processed, he was searched and his back brace was removed.  (*See* SAC, Dkt. 170, at ECF 3.) Plaintiff's back brace "was never recovered."  (*Id.*; *see also* Pl.'s Opp'n, Dkt. 193, at ECF 4.)

Plaintiff was subsequently transferred to Nassau University Medical Center ("NUMC") where he received treatment, after which he was taken into custody at the Nassau County Correctional Center ("NCCC").  (*See* SAC, Dkt. 170, at ECF 3.)  While Plaintiff was incarcerated at the NCCC, he received medication and physical therapy for his back injury.  (*Id.* at ECF 4.) After Plaintiff was returned to NYCDOC custody, he continued to receive the same treatment until his release.  (*Id.*)

Plaintiff suffered several injuries arising from the arrest, including back pain, head trauma, and numbness of his fingers and wrist.  (*Id.* at ECF 5.)  He also suffered physical and emotional injuries that were caused by Detectives Jane Doe and John Doe and Detective Dezelic.  (*Id.* at ECF 4.)

The parties dispute whether the personal property that was seized from Plaintiff at the time of his arrest was ever returned.  Plaintiff claims that certain of his personal belongings—a cell phone, a ring, and a chain—were seized by the NCPD upon Plaintiff's arrest in April 2014, and that all but the ring were retained by Defendants (*see* SAC, Dkt. 170, at ECF 4); whereas Defendants claim that all of Plaintiff's personal property that Defendants had, including the ring, were returned to him as of May 2021 (*see* NCPD Property Bureau Invoices, Dkt. 192-7).

## LEGAL STANDARD

Summary judgment under Federal Rule of Civil Procedure ("Rule") 56 is appropriate where the parties' submissions, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (holding that the summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (quoting *Anderson*, 477 U.S. at 248). "To present a 'genuine' issue of material fact sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Horror Inc. v. Miller*, 15 F.4th 232, 241 (2d Cir. 2021) (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden to demonstrate the absence of any genuine issues of material fact[.]" *State of New York v. Mountain Tobacco Co.*, 942 F.3d 536, 541 (2d Cir. 2019). Once this burden is met, the burden shifts to the nonmoving party to proffer evidence establishing the existence of a question of material fact that must be resolved at trial. *See Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252; *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 143 (2d Cir. 2013). That is, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for*

*trial.*"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citations omitted).

"[A]t the summary judgment stage, the district court is not permitted to make credibility determinations or weigh the evidence[.]" *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021).  It must "consider the record in the light most favorable to the non-movant" and "resolve all ambiguities and draw all factual inferences in favor of the non-movant 'if there is a "genuine" dispute as to those facts.'"  *Loreley*, 13 F.4th at 259 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  "[T]he district court may not properly consider the record in piecemeal fashion; rather, it must 'review all of the evidence in the record.'"  *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

When a *pro se* litigant is involved, "the same standards for summary judgment apply, but 'the *pro se* litigant should be given special latitude in responding to a summary judgment motion.'"  *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015) (quoting *Knowles v. N.Y.C. Dep't of Corr.*, 904 F. Supp. 217, 220 (S.D.N.Y. 1995)).  In addition, courts must liberally construe the *pro se* party's pleadings "to raise the strongest arguments that they suggest."  *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)).

## DISCUSSION

## I.   Excessive Force Claim

Defendants first move for summary judgment with respect to Plaintiff's excessive force claim.

A.      **Legal Standard**

"In addressing an excessive force claim brought under [Section] 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct." *Id.* "The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard." *Id.* "Where . . . the excessive force claim arises in the context of an arrest . . . , it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right to be secure in their persons . . . against unreasonable . . . seizures of the person." *Id.* (internal quotation marks omitted).

Under the Fourth Amendment, police officers are prohibited to use "unreasonable and therefore excessive force" in the course of an arrest. *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). Because the Fourth Amendment test of reasonableness is one of "objective reasonableness," courts must consider the totality of the circumstances and conduct a "case and fact specific" inquiry that "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.*; *Graham*, 490 U.S. at 396. In so doing, courts consider, *inter alia*, "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy*, 623 F.3d at 96 (citing *Graham*, 490 U.S. at 396).

12

Police officers' use of force is excessive if it is objectively unreasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

Notably, "[t]he objective reasonableness standard [under the Fourth Amendment analysis] established in *Graham* applies [equally] to actions taken with respect to a person who asserts . . . a claim for excessive force after [the person] has been arrested and detained, but prior to the time when [the person] is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer." *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) (internal quotation marks omitted) (quoting *Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir. 1989)).

On a motion for summary judgment, "[a] court's role in considering excessive force claims is to determine whether a jury, instructed as to the relevant factors, could reasonably find that the force used was excessive." *Brown v. City of New York*, 798 F.3d 94, 103 (2d Cir. 2015).  Therefore, "if there is a dispute concerning the amount of force used and the reasonableness of the force used, the matter becomes a question of fact for a jury to decide." *Frederique v. Cnty. of Nassau*, 168 F. Supp. 3d 455, 472 (E.D.N.Y. 2016).

### B.    Application

Viewed in the light most favorable to Plaintiff, Defendants' motion for summary judgment as to Plaintiff's claim for excessive force is denied as to Detective Dezelic, but granted as to all other Defendants.

### 1.    Claim Against the Doe Defendants with Respect to Tight Handcuffing

Plaintiff alleges that while he was being arrested, he was handcuffed by NCPD Detectives Jane and John Doe, who caused him "physical and emotional injuries," including "numbness of fingers and wrist."  (*See* SAC, Dkt. 170, at ECF 4–5.)  Defendants contend that Plaintiff's claim

should be dismissed because he "has failed to identify the detectives responsible for his handcuffing." (Defs.' Br., Dkt. 192-2, at 11.)  The Court agrees.

"A plaintiff who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party may proceed against that party by designating a fictitious name (a "John Doe") until [he] become[s] aware of that party's identity." *Barrett v. Newburgh*, 720 F. App'x 29, 33 (2d Cir. 2017) (summary order) (internal quotation marks omitted) (quoting N.Y. C.P.L.R. § 1024).  While "[c]ourts typically resist dismissing suits against John Doe defendants until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials[,] . . . [w]here a plaintiff has had ample time to identify a John Doe defendant but gives no indication that he has made any effort to discover the [defendant's] name, . . . the plaintiff simply cannot continue to maintain a suit against the John Doe defendant." *Cruz v. City of New York*, 232 F. Supp. 3d 438, 448 (S.D.N.Y. 2017) (internal quotation marks omitted) (quoting *Coward v. Harrison*, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009)).  In addition, any attempt to name a John Doe defendant in a Section 1983 case brought in New York is subject to the applicable three-year statute of limitations.  *See Pearl v. Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (citing N.Y. C.P.L.R § 214(5)).

Here, Plaintiff initiated this action nearly ten years ago and discovery closed on November 23, 2020.  (*See* Dkt. 1, at 1; 11/23/2020 Docket Order ("All discovery is closed.").)  Yet, there is nothing in the record showing that Plaintiff has ever sought to identify or serve the two Doe Defendants during the course of this lawsuit.  While the record reveals that discovery was stayed intermittently from the commencement of this action until October 2020 due to, *inter alia*, Plaintiff's parallel state criminal proceeding, the parties' motion practices, and Plaintiff's personal issues (*see, e.g.*, 12/17/2014 Docket Order (granting motions for a stay of the action pending the

outcome of Plaintiff's state criminal proceeding); 12/4/2015 Docket Order (continuing the stay pending Plaintiff's state court sentencing); 3/30/2016 Docket Order (ordering that "the stay in this case shall continue until [P]laintiff has been sentenced in relation with his underlying conviction"); 6/14/2016 Docket Order (granting motion to stay all discovery in this case pending the Court's decision on Defendants' motions to dismiss); 4/5/2019 Docket Order (ordering that "this case is stayed for 90 days due to injury in light of [Plaintiff's] car accident"); 11/20/2019 Minute Entry ("Case is stayed for 90 days due to *pro se* plaintiff's personal issues.")), Plaintiff has had ample time and opportunity to discover the identities of the Doe Defendants during the ten-year course of this case and especially after the stay was finally lifted in October 2020 (*see, e.g.*, 10/6/2020 Docket Order (observing that the discovery stay expired and ordering the parties to submit a status report which "must include a proposed date for the completion of all discovery"); 11/3/2020 Minute Entry (noting that "Plaintiff is not seeking any further discovery")).  In particular, the Court allowed the discovery period to be reopened for another three months in light of Plaintiff's anticipated Second Amended Complaint even after discovery had been closed, yet Plaintiff still failed to identify the Doe Defendants.  (*See* 11/23/2020 Docket Order ("All discovery is closed."); 1/21/2021 Minute Entry ("If Plaintiff [files a Second Amended Complaint], Defendants will file their answer, and the discovery period will be reopened for a period of three months from the time Defendants file their answer.").)

Plaintiff admits in his opposition papers that he has not identified the Doe Defendants.  (*See* Pl.'s Opp'n, Dkt. 192, at ECF 7.)  However, he asserts that "[i]t is [Defendants'] duty to identify [John and Jane Doe Defendants] based on the Complaint[.]"  (*Id.*)  It is true that *pro se* litigants are "entitled to assistance from the district court in identifying a defendant" based on information provided by the litigants, *Ceara v. Deacon*, 68 F. Supp. 3d 402, 404 n.1 (S.D.N.Y. 2014) (citing

*Valentin*, 121 F.3d at 75), and that Judge Bianco indeed issued a *Valentin* Order shortly after the case was commenced to assist Plaintiff in his efforts to identify and serve process on unnamed defendants (*see* Dkt. 7, at 1; 10/30/2014 Docket Order).   Nevertheless, even after *Valentin*, Plaintiff's *pro se* status does not relieve him of diligent compliance with the relevant rules of procedural and substantive law in litigating this case.   *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("[*P*]*ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law[.]'" (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).   Accordingly, Plaintiff still "had a duty to diligently litigate his claims against the Doe [D]efendants, including a specific duty to identify, name, and serve them." *Boyd v. Doe #1*, No. 18-CV-1333 (TJM) (ATB), 2021 WL 7542409, at *25 (N.D.N.Y. Nov. 30, 2021).   As discussed above, Plaintiff has failed to fulfill that duty and has not shown good cause excusing that failure. Meanwhile, the statute of limitations has likely expired on the claims against the Doe Defendants. As discussed above, the statute of limitations for actions arising in New York pursuant to Section 1983 is three years.   *See Pearl*, 296 F.3d at 79.   "A Section 1983 claim ordinarily 'accrues when the plaintiff knows or has reason to know of the harm.'"   *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)).   Here, the arrest at issue occurred on April 25, 2014, and Plaintiff's claim for excessive force against the Doe Defendants was filed on September 17, 2014.   (*See* Dkt. 1, at 1, 4.)   "Although [Plaintiff] filed his [C]omplaint naming the defendant officers as ['John Doe' and 'Jane Doe'] within the three-year statute of limitations period, '[i]t is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued.'" *Tapia-Ortiz v. Doe*, 171 F.3d 150, 151–52 (2d Cir. 1999) (quoting *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993)); *see also Hardy v. N.Y.*

16

*State Dep't of Labor*, 19-CV-5291 (CM), 2019 WL 5693506, at *3 (S.D.N.Y. Nov. 1, 2019) ("The naming of 'John Doe' or 'Jane Doe' defendants . . . does *not* toll the three-year statute of limitations period[.]").  "Even if Plaintiff were to substitute the actual officers today, Plaintiff could not enjoy the benefit of relating back to the date of the original filing."  *Brandon v. City of New York*, 705 F. Supp. 2d 261, 278 n.4 (S.D.N.Y. 2010) (citing *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995) ("Rule 15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning the identity of the parties (under certain circumstances), but the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake.")).  If the Court were to allow Plaintiff's claim against these unidentified defendants to continue, they very likely would be prejudiced by Plaintiff's failure to identify them sooner.  *See Boyd*, 2021 WL 7542409, at *25 ("Plaintiff has displayed a complete disregard of that warning during the almost year-long delay in naming the Doe defendants, despite having known their identities.  The individuals designated as the Doe defendants have been prejudiced by this failure, and the court has considered and found no sanction less drastic than dismissal is appropriate."); *Hyatt v. LaValley*, No. 16-CV-528 (TJM) (TWD), 2018 WL 4473389, at *12 (N.D.N.Y. Aug. 2, 2018) ("Plaintiff's failure to name and serve the John and Jane Doe [d]efendants has persisted for almost two years; the individuals designated as John and Jane Does have been prejudiced by the failure[.]").  Accordingly, Plaintiff's excessive force claim against the Doe Defendants is dismissed.  *See, e.g.*, *Burns v. Trombly*, 624 F. Supp. 2d 185, 197–98 (N.D.N.Y. 2008) (dismissing claims against the Doe defendants where after two years of litigation, the *pro se* plaintiff failed to identify the Doe defendants).

## 2. Claim Against Unnamed NCPD Officers Regarding Their Actions in "Forcing" Plaintiff into a Police Car

In his SAC, Plaintiff alleges that after he was arrested and handcuffed, he was forced into a car by unnamed NCPD detectives.  (*See* SAC, Dkt. 170, at ECF 3.)  Defendants urge dismissal of this claim based upon Plaintiff's failure to establish the requisite personal involvement in the constitutional deprivation alleged.  Specifically, Defendants contend that Plaintiff has failed to identify any individual defendant responsible for the alleged excessive force and "does not allege that the other named Defendants, Lieutenant Boden,[11] Detective Gubelli, or Detective Dezelic[,] were responsible for . . . forcing him into the police car."  (Defs.' Br., Dkt. 192-2, at 11–12.)  The Court agrees.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under [Section] 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  "Without evidence supporting a [d]efendant's personal involvement, the motions for summary judgment on the [Section] 1983 claims must be granted.  If there is evidence to support personal involvement, any dispute is a question of fact for the jury."  *Universal Calvary Church v. City of New York*, No. 96-CV-4606 (RPP), 2000 WL 1538019, at *16 (S.D.N.Y. Oct. 17, 2000) (citing *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)).

In this case, the record does not show that Plaintiff has identified at any time in the course of this lawsuit—either "by name, description, or in any other way"—any specific defendant as having used excessive force against him in placing him in the police car.  *See id.*  Rather, Plaintiff

---

[11] As noted earlier, Lieutenant Boden was dismissed from this action on April 20, 2021, prior to the filing of the present motion.  *See supra* note 3; (*see also* 4/20/2021 Docket Entry).

refers to the unidentified defendants generally as "[d]etectives of Nassau County." (*See* SAC, Dkt. 170, at ECF 3.)   Nor has Plaintiff alleged or demonstrated that any of the named officers—Detective Gubelli, Detective Dezelic, or Detective Nicolic—had any personal involvement.   In particular, with respect to Detective Dezelic, while it is undisputed that he was at the scene when the arrest occurred, his mere presence at the site of the arrest involving several officers is insufficient to establish that he forced Plaintiff into the police car, and therefore is "not evidence of personal involvement for the purpose of holding [an] individual defendant[] liable for constitutional violations." *See Universal Calvary Church*, 2000 WL 1538019, at *18.   "Although the Court understands that, in a chaotic situation such as this one, it is difficult to observe and remember every detail," as noted above, the procedural posture of this case has provided Plaintiff plenty of opportunities to identify the unidentified defendants or allege each named officers' individual actions with specificity.   *See id.*

Because Plaintiff has failed to identify any of the unnamed NCPD Officer-Defendants, and has not alleged or put forth any evidence that any of the named defendants had any personal involvement in the alleged use of excessive force, summary judgment is granted to Detective Dezelic, Detective Gubelli, and Detective Nicolic on this claim.   *See, e.g.*, *Caceres v. Port Auth. of New York & New Jersey*, No. 06-CV-1558 (JGK), 2008 WL 4386851, at *12 (S.D.N.Y. Sept. 24, 2008) (granting summary judgment in part where a plaintiff "failed to identify any particular defendant as having strip-searched him"); *Universal Calvary Church*, 2000 WL 1538019, at *18 ("Without any evidence linking any of the [d]efendants to the use of force in any way, this Court cannot allow the charge to go to trial when the [d]efendants are being held personally liable for constitutional violations."); *cf. Baines v. City of New York*, No. 10-CV-9545 (JMF), 2017 WL 3425746, at *3 (S.D.N.Y. Aug. 9, 2017) (denying summary judgment, in part, because plaintiff

"did provide a physical description of the three officers involved . . . At trial, therefore, he might very well be able to identify the involved [o]fficers").

### 3. Claim Against Detective Dezelic For "Forcing" Passenger Seat Against Plaintiff[12]

Defendants claim that Plaintiff's excessive force claim against Detective Dezelic, based on the detective allegedly "forcing" the front passenger seat of the police vehicle against Plaintiff who was in the back seat, should also be dismissed on summary judgment because "the claimed force was *de* [*minimis*] and does not rise to the level of excessive force," especially since Plaintiff does not state that "Detective Dezelic's actions caused him pain or aggravated his pre-existing back injury."[13]  (Defs.' Br., Dkt. 192-2, at 8, 10.)  The Court disagrees.  Construing the record in the light most favorable to Plaintiff, the Court finds that there is a genuine dispute over whether the alleged force used by Detective Dezelic was excessive.

Here, according to Plaintiff, after he was arrested, placed in handcuffs, and put in the back seat of the police vehicle, the passenger seat was "forced back" by Detective Dezelic, who was

---

[12] The Court notes that in addressing Plaintiff's excessive force claim against Detective Dezelic, Defendants identified the specific constitutional right allegedly infringed by Detective Dezelic as the Eighth Amendment's ban on cruel and unusual punishments, and accordingly, applied the standards thereunder.  (*See* Defs.' Br., Dkt. 192-2, at 8–10.)  However, as explained above, the Fourth Amendment objective reasonableness standard should be applied to circumstances where, as here, the alleged excessive force is used "after [a person] has been arrested and detained, but prior to the time when [the person] is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer."  *Cugini*, 941 F.3d at 612; *see also supra* Discussion Part I.A.  "Therefore, although Defendants [applied] Eighth Amendment standards to [Plaintiff's excessive force claim against Detective Dezelic], the Court analyzes this claim under the Fourth Amendment."  *Cox v. Fischer*, 248 F. Supp. 3d 471, 479 (S.D.N.Y. 2017).

[13] Although Defendants contend that Detective Dezelic's alleged use of force was minimal, Defendants have failed to proffer any competent evidence to support their contention, in particular, evidence to show that any injuries that Plaintiff suffered were minimal.  (*See generally* Defs.' Br., Dkt. 192-2.)  Assuming that Plaintiff's medical records for his subsequent treatment at the NUMC, NCCC, and NYCDOC are available, Defendants have not produced such records either.

seated in front of Plaintiff (*see* SAC, Dkt. 170, at ECF 3), which Plaintiff argues amounted to excessive force because Plaintiff did not present a risk of flight or any other unlawful conduct (*see* Pl.'s Opp'n, Dkt. 193, at ECF 7).[14]   As a result, Detective Dezelic caused Plaintiff "physical and emotional injuries[,]" including "back pain." (SAC, Dkt. 170, at ECF 4–5.)   The Court finds that each of the *Graham* factors weighs in Plaintiff's favor here and that whether the alleged force committed by Detective Dezelic was excessive is a question for the jury.

First, the crimes at issue were relatively minor: possession of stolen property in connection with certain credit/debit cards. *See Burris v. Nassau Cnty. Dist. Att'y*, No. 14-CV-5540 (JFB) (GRB), 2018 WL 4609137, at *2 (E.D.N.Y. Aug. 30, 2018), *R. & R. adopted*, 2018 WL 4508196 (E.D.N.Y. Sept. 25, 2018).   In addition, there is no indication that Plaintiff tried to flee, as he had already been handcuffed and was in the custody of the NCPD officers at the time of the alleged

---

[14] In his opposition brief, Plaintiff asserts that because Detective Dezelic is also a defendant in a different case where Plaintiff filed a "civil rights complaint against him," Detective Dezelic "conspired to relalitate [*sic*] against . . . Plaintiff" which "may have caused the unprovoced [*sic*] attack upon . . . Plaintiff[.]" (Pl.'s Opp'n, Dkt. 193, at ECF 6.)   Defendants argue that this "new, unsubstantiated allegation[] against Defendant Dezelic, e.g., accusing Dezelic of engaging in a conspiracy to 'retaliate' against [Plaintiff]" must be disregarded. (Defs.' Reply Br., Dkt. 198, at 2–3.)  The Court agrees.   Although Plaintiff made similar allegations regarding Detective Dezelic's retaliatory intent in his original Complaint and the FAC (*see* Compl., Dkt. 1, at ECF 4, 6, 8; FAC, Dkt. 108, at 4), he has not expressly alleged a "retaliation conspiracy" against Detective Dezelic. Furthermore, these allegations do not appear in the SAC and Plaintiff has never identified any alleged co-conspirators in support of this claim.   And, at this point in the litigation, Plaintiff has pointed to no evidence to support this alleged conspiracy.   While the Court has liberally construed the record for purposes of deciding this motion to include Plaintiff's own statements and allegations, these allegations are not supported by evidence. *See Pierre v. City of New York*, 531 F. Supp. 3d 620, 628 n.5 (E.D.N.Y. 2021) (finding that "[a] plaintiff, even when proceeding *pro se*, may not raise new allegations for the first time in opposition to summary judgment").   The Court therefore does not credit Plaintiff's unsupported and purely speculative allegations about a conspiracy to retaliate against Plaintiff by Detective Dezelic, even for the purpose of assessing the reasonableness of the alleged force used by Detective Dezelic.   Furthermore, as explained above, in making that assessment, the Court determines whether Detective Dezelic's actions are "objectively reasonable" solely "in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation[.]" *Graham*, 490 U.S. at 396–97.

incident.  *See, e.g.*, *Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 342–43 (E.D.N.Y. 2006) (holding that allegations that officers continued to use force after plaintiff had been subdued preclude summary judgment) (collecting cases).  Nor is there any indication that Plaintiff posed a safety threat, immediate or otherwise, to Detective Dezelic or anyone else in the car.  Moreover, the SAC alleges that Plaintiff suffered several injuries—including back injury—for which he was treated at a hospital following his arrest, and that continued treatment, including medication and physical therapy, was required while he was incarcerated at the NCCC and the NYCDOC until he was released from custody.  (*See* SAC, Dkt. 170, at ECF 4.)  What is more, because Plaintiff had pre-existing fractured bones at the time of the arrest for which he was wearing a back brace, a reasonable jury could find that Detective Dezelic's actions exacerbated his pre-existing injury.  *See Frederique*, 168 F. Supp. 3d at 473 ("accepting as true [plaintiff's allegations]" and denying motion for summary judgment, in part, where a reasonable jury could find that the officer's action in kicking plaintiff's dislocated shoulder exacerbated plaintiff's pre-existing injury and thus constituted excessive force); *Rivera v. City of Rochester*, No. 09-CV-6621 (FPG), 2015 WL 409812, at *6 (W.D.N.Y. Jan. 29, 2015) (denying motion for summary judgment, in part, where the plaintiff alleged that a police officer's use of force exacerbated a prior injury).

Based on the foregoing, a reasonable jury could find that the degree of force allegedly employed by Detective Dezelic—"forcing" his seat back against Plaintiff who already had fractured bones (and was wearing a back brace) at the time after Plaintiff was arrested and handcuffed—is, objectively considered, unwarranted and excessive under the circumstances. Therefore, viewed in the light most favorable to Plaintiff, the Court finds that Plaintiff's allegations

are sufficient to create genuine issues of material fact as to the objective reasonableness of the force used and thus withstand Defendants' motion for summary judgment.[15]

## II.    Deliberate Indifference to Medical Needs Claim

Defendants also move for summary judgment regarding Plaintiff's claim alleging deliberate indifference by Defendants to his medical needs.

### A.    Legal Standard

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "The Supreme Court [has] extended the protections for prisoners [under the Eighth Amendment] to civil detainees under the Due Process Clause of the Fourteenth Amendment, reasoning that persons in civil detention deserve at least as much protection as those who are criminally incarcerated." *Charles v. Orange County*, 925 F.3d 73, 82 (2d Cir. 2019) (citing *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982)).

Under the applicable Fourteenth Amendment standard, "[a] pretrial detainee may establish a [Section] 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Specifically, a pretrial detainee must satisfy a two-pronged test to

---

[15] In addition to the foregoing arguments raised by Defendants, they contend in their brief that Plaintiff's excessive force claim fails because "the officer Plaintiff blames for his injury is not in fact a Nassau County employee," but a NYCDOC officer, who later was identified as Officer Spatarella and is "responsible for . . . re-aggravat[ing] [] Plaintiff's pre-existing back injury." (*See* Defs.' Br., Dkt. 192-2, at 8.) This argument plainly fails. The fact that Officer Spatarella's alleged action may have aggravated Plaintiff's pre-existing injury does not in any way preclude the possibility that, as discussed above, "a reasonable jury may find that [Detective Dezelic's] actions [also] exacerbated [Plaintiff's] pre-existing injury." *Frederique*, 168 F. Supp. 3d at 473. That is plainly a factual issue for the jury to resolve.

prevail on a claim for deliberate indifference to serious medical needs.  *See Charles*, 925 F.3d at

86.  Under the first "objective prong,"[16] "the plaintiff must show that he actually did not receive

adequate care and that the inadequacy in medical care was sufficiently serious."  *Valdiviezo*, 752

F. App'x at 32 (citing *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)).  Specifically, the

alleged deprivation must be sufficiently serious to constitute "a condition of urgency such as one

that may produce death, degeneration, or extreme pain."  *Charles*, 925 F.3d at 86 (citing *Hathaway

v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).   To determine whether a medical need is

"sufficiently serious to be cognizable as a basis for a constitutional claim for deprivation of medical

care," courts "consider factors such as whether a reasonable doctor or patient would find the injury

important and worthy of treatment, whether the medical condition significantly affects an

individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain."

*Id.* (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).  In particular, it may arise

where "the failure to treat a prisoner's condition could result in further significant injury or the

'unnecessary and wanton infliction of pain[.]'"  *Chance*, 143 F.3d at 702  (quoting *Gutierrez v.

Peters*, 111 F.3d 1364, 1373 (2d Cir. 1997)).  "In most cases, the actual medical consequences that

flow from the denial of care are highly relevant in determining whether the denial of treatment

subjected the detainee to a significant risk of serious harm."  *Charles*, 925 F.3d at 86 (quoting

*Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003)).  "When the basis for a plaintiff's claim 'is

a temporary delay or interruption in the provision of otherwise adequate medical treatment,'

[courts in this Circuit] examine[] whether the delay itself created a risk of harm.  *Valdiviezo*, 752

---

[16] The Court notes that "[f]or Fourteenth Amendment claims, [the Second Circuit] applies
the same standard as the Eighth Amendment to determine whether an alleged action is objectively
serious enough to be a constitutional violation." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir.
2018) (summary order).

F. App'x at 32 (citing *Smith*, 316 F.3d at 185–86).  "In considering whether a delay caused a risk of harm, a court may consider '[t]he absence of adverse medical effects or demonstrable physical injury.'"  *Id.* (quoting *Smith*, 316 F.3d at 187).

Under the second "subjective" prong, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."  *Darnell*, 849 F.3d at 35.  Thus, "the 'subjective prong' (or '*mens rea* prong') of a deliberate indifference claim is defined objectively[,]" and "does not require proof of a malicious or callous state of mind."  *Id.*; *Charles*, 925 F.3d at 86.  Thus, under this standard, a detainee "can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health."  *Charles*, 925 F.3d at 87.

### B.   Application

Here, viewed in the light most favorable to Plaintiff, the Court finds that material issues of fact preclude dismissal of Plaintiff's deliberate indifference claim against Detective Dezelic on summary judgment.  Thus, the motion for summary judgment as to Plaintiff's claim for deliberate indifference is denied as against Detective Dezelic, but granted as to all other Defendants.

### 1. Deliberate Indifference Claim Against Detective Dezelic[17]

#### a. Objective Prong: Serious Medical Needs

Defendants argue that Plaintiff has failed to satisfy the first objective prong, because Plaintiff's injuries are not objectively "serious" as a matter of law.[18]  (Defs.' Br., Dkt. 192-2, at 14–15.)  Specifically, Defendants assert that "Plaintiff fails to allege that the delay of a few hours adversely affected his health" and that Plaintiff "merely alludes [to the fact] that he was in pain during his [arrest] processing, not that the time spent in processing adversely affected his health." (*Id.* at 15.)  The Court disagrees.

Based on an objective standard, the Court finds that Plaintiff has raised a genuine dispute of material fact as to whether his injuries were "sufficiently serious," i.e., that the claimed injuries

---

[17] Defendants contend, in their reply brief, that Plaintiff in his opposition papers makes "new" allegations against Detective Dezelic, because, *inter alia*, Plaintiff asserts that "Detective Dezelic was one of the officers who failed to provide him with medical assistance, despite [Plaintiff's] SAC] lacking that specific claim against Detective Dezelic." (Defs.' Reply Br., Dkt. 198, at 2.)  The Court disagrees.  It is undisputed that Plaintiff alleges in his SAC that (1) while in the car being transported to the NCPD precinct, Plaintiff "requested medical attention," at which point "the passenger seat was forced back by Det. Dezlic [*sic*] who sat in front of Plaintiff," (SAC, Dkt. 170, at ECF 3), and (2) Detective Dezelic caused him "physical and emotional injuries," (*id.* at ECF 4).  Taken together, these allegations support a reasonable inference that Detective Dezelic was one of the officers with Plaintiff when he "requested medical treatment," even though Plaintiff does not specifically name Detective Dezelic in his SAC in his claim of deliberate indifference. In fact, Plaintiff specifically alleged in his FAC that "Detective John Dezelic . . . falied [*sic*] to proved [*sic*] medical attention promptly while driving to . . . [NCPD] . . . left this Plaintiff in excessive pain for long period of time, and left this Plaintiff to suffer until after he made his official [a]rrest and the Compleation [*sic*] of filing of fictios [*sic*] charges." (*See* FAC, Dkt. 108, at ECF 3.)  Therefore, liberally and fairly construing Plaintiff's SAC and incorporating his opposition papers and prior complaints in light of his *pro se* status, Plaintiff has consistently asserted a deliberate indifference claim as to Detective Dezelic, and thus this claim does not constitute a "new" claim.

[18] Again, Defendants have failed to offer any supporting evidence, including Plaintiff's medical records, to demonstrate that Plaintiff's injuries are not objectively serious.  (*See generally* Defs.' Br., Dkt. 192-2.)

could have "produce[d] death, degeneration, or extreme pain," and as to whether the delay of the treatment created a risk of harm. *See Charles*, 925 F.3d at 86.

First, Plaintiff claims to have suffered "back pain, head trauma, [and] numbness of fingers and wrist" as a result of the use of force during his arrest. (SAC, Dkt. 170, at ECF 5.) He further alleges that he experienced "excessive pain in [his] upper/lower back, arms[,] and face," (*id.* at ECF 3), that "more rapid treatment would have alleviated," *see Rodriguez v. Mercado*, No. 00-CV-8588 (JSR) (FM), 2002 WL 1997885, at *9 (S.D.N.Y. Aug. 28, 2002); *cf. Blount v. Rastani*, No. 21-CV-147 (DNH) (CFH), 2023 WL 5776449, at *8 (N.D.N.Y. Aug. 10, 2023) (holding that the plaintiff's injuries did not constitute a serious medical need because, *inter alia*, the "plaintiff [did] not allege, nor [was] there evidence, that the alleged sprains caused him extreme pain or resulted in any sort of degeneration or limits on his activities of daily living"). In particular, considering that Plaintiff was recovering from fractured bones at the time of the arrest and that the back brace that he was using to treat his prior injury was never returned to him (SAC, Dkt. 170, at ECF 3), a reasonable jury may conclude that the new injuries inflicted upon Plaintiff during his arrest, in combination with his pre-existing injury, constituted a serious medical need. *See, e.g.*, *Dobbin v. Artuz*, 143 F. Supp. 2d 292, 302 (S.D.N.Y. 2001) (holding that inmate's chronic back injury satisfied the objective prong of the deliberate indifference claim at the summary judgment stage); *cf. White v. Rock*, No. 13-CV-392 (GTS) (CFH), 2016 WL 11478222, at *10 (N.D.N.Y. Feb. 23, 2016) ("Courts in this Circuit, including within this District, have consistently held that 'cuts, lacerations, bruises, and other superficial injuries,' are not 'sufficiently serious to support' a deliberate indifference claim."), *R. & R. adopted*, 2016 WL 1248904 (N.D.N.Y. Mar. 29, 2016). Importantly, Plaintiff's eventual treatment—which included treatment at a hospital in the aftermath of the incident as well as continued medication and physical therapy while he was

incarcerated at the NCCC and by the NYCDOC until he was released from custody—further bolsters his claim of serious medical needs.  (*See* SAC, Dkt. 170, at ECF 4); *cf. Morehouse v. Vasquez*, No. 17-CV-4836 (KMK), 2020 WL 1049943, at *18 (S.D.N.Y. Mar. 4, 2020) (holding that pain that "subsided after a couple of days to two weeks at the most" was not sufficiently serious).  Defendants do not even address the seriousness of Plaintiff's injuries in their Rule 56.1 Statement, nor offer any evidence to suggest that Plaintiff's injuries were not serious.

In addition, with respect to whether the delayed treatment created a risk of harm, Plaintiff alleges that he remained in excessive pain during his transportation to the NCPD precinct and the several hour-long wait while he was being processed.  (*See* SAC, Dkt. 170, at ECF 3; Pl.'s Opp'n, Dkt. 193, at ECF 4.)  Notably, Plaintiff asserts that the back brace—which he was using to treat his fractured bones—was removed while he was at the precinct and was never returned to him. (*See* SAC, Dkt. 170, at ECF 3; *see also* Pl.'s Opp'n, Dkt. 193, at ECF 8.)  The reasonable implication of Plaintiff's allegations, read liberally, is that the delay of the treatment, in conjunction with the loss of his medical equipment, could have exacerbated his new and pre-existing injuries.  Plaintiff's eventual treatment, as discussed above, further supports this inference.

In sum, the evidence before the Court, viewed in the light most favorable to Plaintiff, could allow a reasonable jury to conclude that the objective prong of Plaintiff's deliberate indifference claim is satisfied.

b. <u>Subjective Prong: Deliberate Indifference</u>

Defendants also argue that Plaintiff fails to meet the subjective prong, as there is "no evidence that [Detective Dezelic] knew or should have known that the slight delay in providing

Plaintiff with medical attention would cause a substantial risk to his health."[19]  (Defs.' Br., Dkt. 192-2, at 14–15.)  The Court again disagrees.

Here, it is undisputed that when Plaintiff was being transported to the NCPD precinct, he requested medical treatment, and that Detective Dezelic and the other NCPD officers who were transporting Plaintiff did not take him to a hospital, but took him directly to the precinct. Furthermore, especially given that Plaintiff was wearing a back brace, Detective Dezelic knew or should have known that Plaintiff was in pain and suffering from a serious injury when Detective Dezelic allegedly "forced" his seat back against Plaintiff in the police vehicle.  *See Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 498 (N.D.N.Y. 2017) (finding that the defendant's conduct constituted deliberate indifference when the defendant "dragged plaintiff across the ground and may possibly have experienced some change in plaintiff's behavior, or even the simple feeling of resistance giving way, that would signal plaintiff had suffered a serious injury, such as a broken hip").

Upon arriving at the NCPD precinct, Plaintiff requested medical treatment for a second time.  (*See* SAC, Dkt. 170, at ECF 3.)  Plaintiff asserts that his request was again ignored, and he was thus left in "excessive pain" during the "long wait" for several hours until his arrest processing

---

[19] Defendants also argue, in their reply brief, that because Plaintiff in his opposition papers "fails to refute [Defendants'] assertion that there is no evidence that . . . Defendants knew or should have known that the slight delay in providing Plaintiff with medical attention would cause a substantial risk to his health."  (Defs.' Reply Br., Dkt. 198, at 3.)  "A *pro se* plaintiff, however, should not be presumed to have abandoned his claims because he did not address a defendant's specific arguments."  *Tsismentzoglou v. Milos Estiatorio Inc.*, No. 18-CV-9664 (RA), 2019 WL 2287902, at *2 n.3 (S.D.N.Y. May 29, 2019); *see also Porter v. Uhler*, 17-CV-47 (MAD) (TWD), 2019 WL 1292226, at *5 (N.D.N.Y. Mar. 21, 2019).  "Indeed, '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'"  *Tsismentzoglou*, 2019 WL 2287902, at *2 n.3 (quoting *Traguth*, 710 F.2d at 95).

was completed.  (*See id.*; Pl.'s Opp'n, Dkt. 193, at ECF 4, 7.)  In particular, Plaintiff claims that after he was processed and searched, his "back brace was removed" and was never returned to him (*see* SAC, Dkt. 170, at ECF 3; *see also* Pl.'s Opp'n, Dkt. 193, at ECF 8), even though Detective Dezelic and the NCPD officers "had no medical training or doctor" to do so (Pl.'s Opp'n, Dkt. 193, at ECF 8).  Under these circumstances, a reasonable jury could find that Detective Dezelic readily could have inferred from the back brace that Plaintiff had pre-existing injuries and thus Detective Dezelic should have known that delaying the provision of medical attention would cause a substantial risk to Plaintiff's health.  In addition, Detective Dezelic's alleged decision to remove Plaintiff's medical equipment in itself could constitute deliberate indifference to Plaintiff's medical needs, as it clearly could have resulted in more serious injury.  *See Valdiviezo*, 752 F. App'x at 32 ("The medical staff's decision to permit detainees, who were likely untrained, to carry a man complaining of a neck and back injury could constitute inadequate care, as it could have resulted in more serious injury."); *Salahuddin*, 467 F.3d at 280 ("[F]ailing 'to take reasonable measures' in response to a medical condition can lead to liability." (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)); *Smith*, 316 F.3d at 188 (holding that a deliberate indifference claim may be based on "conduct . . . exposing an inmate to an unreasonable risk of future harm").

Based on the foregoing, a reasonable factfinder could find that Detective Dezelic knew or should have known that Plaintiff was in serious need of immediate medical care and yet denied him such care because he was deliberately indifferent to that need.

\*       \*       \*

In sum, on the record taken in the light most favorable to Plaintiff, a reasonable jury could conclude that Detective Dezelic was deliberately indifferent to Plaintiff's serious medical needs

30

during transportation back to the police station and his post-arrest processing.  Accordingly, summary judgment on Plaintiff's deliberate indifference claim as to Detective Dezelic is denied.[20]

### 2.  Claims Against Other NCPD Officers

With respect to Plaintiff's claim of deliberate indifference against other NCPD officers, Defendants argue that this claim fails because Plaintiff does not identify these defendants.  (Defs.' Br., Dkt. 192-2, at 10–11.)  The Court again agrees.  As with his excessive force claim against the unspecified NCPD officers, Plaintiff has failed to state who allegedly ignored his request or denied him medical treatment, and has not submitted any evidence that any of the named officers other than Detective Dezelic had any personal involvement in the alleged deliberate indifference to Plaintiff's medical needs.  Accordingly, summary judgment is granted as to Detective Gubelli and Detective Nicolic on this claim.  *See, e.g.*, *Ali v. Szabo*, 81 F. Supp. 2d 447, 464 (S.D.N.Y. 2000) ("[S]ince there is no evidence that defendants were personally involved in [the plaintiff's] alleged denial of medical treatment, defendants should be granted summary judgment on this claim.").

---

[20] Here, the factually related nature of Plaintiff's excessive force and deliberate indifference claims against Detective Dezelic, and the fact that the former claim will proceed to trial, provide another reason to deny summary judgment as to the deliberate indifference claim. "If one of a number of integrally related causes of action have to be tried, it makes no sense to grant summary judgment as to one or more of them, as it may prove necessary to hold yet another trial in the event that it is determined on appeal that summary judgment was improperly granted." *Manzi v. DiCarlo*, 62 F. Supp. 2d 780, 793 (E.D.N.Y. 1999); *see also Eka v. Brookdale Hosp. Med. Ctr.*, 247 F. Supp. 3d 250, 277–78 (E.D.N.Y. 2017) (denying the defendant's motion for summary judgment as to plaintiff's hostile work environment claim because plaintiff's discrimination claims as to denial of extra and overtime shifts survived summary judgment and plaintiff's hostile work environment claim was based on the same allegations with the discrimination claims); *Audi Vision Inc. v. RCA Mfg. Co.*, 136 F.2d 621, 625 (2d Cir. 1943) ("[T]here seems no question that in the long run fragmentary disposal of what is essentially one matter is unfortunate not merely for the waste of time and expense caused the parties and the courts, but because of the mischance of differing dispositions of what is essentially a single controlling issue.").

### III.    Deprivation of Property Claim[21]

Plaintiff alleges that Defendants seized and have failed to return certain personal belongings of his in connection with his April 25, 2014 arrest: a cell phone, a ring,[22] and a chain. (*See* SAC, Dkt. 170, at ECF 4.)  Construing Plaintiff's allegations to assert a claim under the Fourteenth Amendment for deprivation of property without due process of law, Defendants' motion for summary judgment is granted and Plaintiff's claim is dismissed.

### A.    The Status of Plaintiff's Personal Properties

With respect to Plaintiff's claim regarding his cell phone, Defendants represent that "Plaintiff could not previously retrieve his phone due to a filing issue which was subsequently corrected by NCPD, and that the phone was . . . available to be claimed." (Defs.' Br., Dkt. 192-2, at 16; *see also* Dkt. 192-8, at ECF 3 (noting that the issue with retrieving Plaintiff's cell phone

---

[21] The Court previously dismissed Plaintiff's deprivation of property claims in his FAC. (*See* 1/21/2021 Minute Entry ("The Court confirmed on the record that all of Plaintiff's claims, except his claims for excessive force and inadequate medical care, were previously dismissed. Plaintiff has until March 4, 2021 to file a [SAC], providing additional facts, if any, regarding his remaining claims for excessive force and inadequate medical care.  If Plaintiff does so, Defendants will file their answer, and the discovery period will be reopened for a period of three months from the time Defendants file their answer."); 3/9/2021 Docket Order ("The Court will grant Plaintiff until **April 9, 2021** to submit his [SAC], which should lay out the detailed factual allegations (not the legal conclusions) underlying his claims of **excessive force** and **inadequate medical care** against the Nassau County Defendants relating to his April 25, 2014 arrest.  All of Plaintiffs other claims have been dismissed.").)  However, Plaintiff's deprivation of property claims that were previously dismissed were against a different defendant in this action, rather than the current Defendants, and concerned different personal properties. *See Burris*, 2018 WL 4609137, at *3–5 (dismissing Plaintiff's deprivation of property claim against defendant Detective Christopher Tzimoratas regarding certain credit/debit cards and Plaintiff's cell phone).  In light of the procedural posture of this case, Plaintiff's *pro se* status, and Defendants' briefing on Plaintiff's deprivation of property claim set forth in Plaintiff's SAC against Defendants of the present motion, the Court will thus address Plaintiff's deprivation of property claim.

[22] It appears from Plaintiff's SAC that the ring that was allegedly seized has been returned to Plaintiff.  (*See* SAC, Dkt. 179, at ECF 4 ("Upon Plaintiff's day of retriving [*sic*] of property[,] he only was given a ring[.]").)  However, out of an abundance of caution, the Court addresses that claim and, for the reasons discussed below, finds that it should be dismissed.

"has now been corrected and Plaintiff may immediately retrieve his phone without further delay").) Defendants also note that Plaintiff "has been notified numerous times that he is free to pick up his device[,]" (Defs.' Br., Dkt. 192-2, at 16), and the record shows that Plaintiff's phone, in fact, has been retrieved (*see* NCPD Property Bureau Invoice, Dkt. 192-7, at ECF 6 (marking "T-Mobile Samsung Galaxy SII cellular phone" as "returned" on May 17, 2021)).

Regarding Plaintiff's claim as to his ring, Defendants have shown that the ring was not among the items that were identified and inventoried in connection with Plaintiff's April 25, 2014 arrest.  (*See* Defs.' Br., Dkt. 192-2, at 15–16; *see also* NCPD Property Bureau Invoice, Dkt. 192-7, at ECF 6.)[23]  Instead, the ring was inventoried by the NCPD in connection with Plaintiff's October 21, 2009 arrest, and Plaintiff retrieved this ring on March 11, 2021.  (Defs.' Br., Dkt. 192-2, at 16; *see also* NCPD Property Bureau Invoice, Dkt. 192-7, at ECF 2 (listing a "gray metal ring with white stones" as item inventoried in connection with October 21, 2009 arrest and marking it as "returned" as of March 11, 2021).)  As Defendants further point out in their reply brief, Plaintiff admits in his SAC and opposition papers that the cell phone and the ring have been returned to him.  (*See* SAC, Dkt. 179, at ECF 4 ("Upon Plaintiff's day of retriving [*sic*] of property[,] he only was given a ring[.]"); Pl.'s Opp'n, Dkt. 193, at ECF 8 (stating that Plaintiff's "chain was never returned with the exception of everything else")); *see also* Defs.' Reply Br., Dkt. 198, at 4).)  Given that the cell phone and the ring at issue—based on the evidence proffered by Defendants and

---

[23] As the NCPD Property Bureau Invoices show, the items that were identified and inventoried following Plaintiff's April 25, 2014 arrest are as follows: security videos from a Target store in Westbury; a T-Mobile Samsung Galaxy SII cellular phone; a red rubber cell phone case; a black plastic cell phone case; a Volkswagen motor vehicle key; a Toyota motor vehicle key; a BMW motor vehicle key; a Mercedes-Benz vehicle key; a Volvo vehicle key; a DVD; a City of New York Police Department Security Envelope; and a DVD containing contents of Plaintiff's cell phone pursuant to a search warrant.  (*See* NCPD Property Bureau Invoices, Dkt. 192-7, at ECF 4–7.)

Plaintiff's own admission—have been returned to Plaintiff, the Court finds Plaintiff's deprivation of property claim with respect to these two items moot. *See Murphy v. Hunt*, 455 U.S. 478, 481 (1982) ("In general a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." (internal quotation marks omitted) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980))).

Regarding Plaintiff's claim with respect to the chain, although Plaintiff asserts that the chain "was never returned" to him (Pl.'s Opp'n., Dkt. 193, at 8), Defendants contend that, as discussed above, the alleged chain was not among the items that were inventoried in connection with Plaintiff's 2014 arrest. (*See* Defs.' Br., Dkt. 192-2, at 15–16; Defs.' Reply Br., Dkt. 198, at 4; NCPD Property Bureau Invoices, Dkt. 192-7, at ECF 2–7; *see also supra* note 23.) Defendants further claim that prior to NCPD's receipt of the inventoried items at issue, these items were previously collected and gathered by the NYCDOC officers, and then delivered to the NCPD in an envelope. (*See* Defs.' Br., Dkt. 192-2, at 16; *see also* NCPD Property Bureau Invoices, Dkt. 192-7, at ECF 6 (listing "City of New York Police Department Security Envelope that contained all the above [items]" as one of the inventoried items in connection with Plaintiff's April 25, 2014 arrest).) Plaintiff fails to provide any evidence to dispute this documentation regarding the allegedly missing chain.

Based on the evidence presented, the Court finds that Defendants are entitled to summary judgment on Plaintiff's deprivation of property claim because Plaintiff would be unable to show the deprivation of any property.

### B.     State Post-Deprivation Remedy

Plaintiff's deprivation of property claim fails for an additional reason. To sustain a procedural due process claim under the Fourteenth Amendment, a plaintiff must allege "that he:

(1) had a protected liberty or property interest and (2) was deprived of that interest without due process." *Johnson v. City of New York*, No. 16-CV-2879 (PKC) (LB), 2018 WL 1175139, at *3 (E.D.N.Y. Mar. 5, 2018) (citation and internal quotation marks omitted); *Roman-Malone v. City of New York*, No. 11-CV-8560 (PAC), 2013 WL 3835117, at *3 (S.D.N.Y. July 25, 2013) ("To state a claim for a violation of procedural due process, Plaintiff must allege that []he was deprived [of] a protected interest in liberty or property, without adequate notice or opportunity to be heard."). "Deprivation of property by a state actor, whether intentional or negligent, does not give rise to a claim under [Section] 1983 so long as the law of that state provides for an adequate post-deprivation remedy and the deprivation was the result of a 'random and unauthorized' act." *David v. N.Y.P.D. 42nd Precinct Warrant Squad*, No. 02-CV-2581 (DC), 2004 WL 1878777, at *5 (S.D.N.Y. Aug. 23, 2004) (collecting cases); *see also Davis v. New York*, 311 F. App'x 397, 400 (2d Cir. 2009) (summary order); *Johnson*, 2018 WL 1175139, at *3.

Here, Plaintiff does not claim that his alleged deprivation was due to an established state procedure.  (*See generally* SAC, Dkt. 170.)  Nor is there any evidence "suggesting that there is any infirmity in the established procedures used by [the NCPD] in seizing property from [Plaintiff] at the time of [his arrest]." *Watts v. N.Y.C. Police Dep't*, 100 F. Supp. 3d 314, 329 (S.D.N.Y. 2015). Therefore, "when a plaintiff brings a procedural due process claim '[b]ased on random unauthorized acts by state employees,' the state satisfies procedural due process requirements so long as it provides a meaningful post-deprivation remedy." *Ahmed v. Town of Oyster Bay*, 7 F. Supp. 3d 245, 254 (E.D.N.Y. 2014) (citing *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)).  "Accordingly, the only remaining question is whether New York has provided an adequate post-deprivation remedy." *Watts*, 100 F. Supp. 3d at 329.

In this case, there existed adequate state post-deprivation remedies that Plaintiff could have used to retrieve his personal belongings—or to receive monetary compensation in the event that they were lost—such as bringing a state law claim in the Court of Claims.  *See, e.g.*, *id.* ("Where loss of property was random and unauthorized, courts have found that New York provides an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, or conversion[.]" (internal quotation marks omitted) (quoting *Cantave v. N.Y.C. Police Offs.*, No. 09-CV-2226 (CBA) (LB), 2011 WL 1239895, at *7 (E.D.N.Y. Mar. 28, 2011))); *Love v. Coughlin*, 714 F.2d 207, 208–09 (2d Cir. 1983) (affirming dismissal of the plaintiff's claim that property was taken by correctional officers because "no civil rights action lies *if* the state provides an adequate compensatory remedy" and noting that New York's Court of Claims provides adequate post-deprivation remedies).  Because Plaintiff had access to these remedies, his deprivation of property claim fails as a matter of law and is dismissed.  *See, e.g.*, *Wahid V. Mogelnicki*, 406 F. Supp. 3d 247, 249–50 (E.D.N.Y. 2017) (dismissing plaintiff's deprivation of property claim, *inter alia*, given New York's adequate post-deprivation remedies).

*      *      *

Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's deprivation of property claim.

## IV.   *Monell* Liability

Defendants also move for summary judgment on Plaintiff's claims against the NCPD and the Nassau County District Attorney on the basis that the SAC is devoid of municipal liability allegations "tending to support the inference that allegedly unconstitutional violations were due to a Nassau County policy, practice, or custom."  (Defs.' Br., Dkt. 192-2, at 16–18.)  Once again, the Court agrees.

### A.    Legal Standard

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quoting 42 U.S.C. § 1983).  Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012).  In order to sustain a claim for relief under Section 1983 against a municipal defendant, such as Nassau County, a "plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985).  Second, a plaintiff must establish a "direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation." *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

### B.    Application

Here, Plaintiff does not allege in any of his complaints or pleadings a plausible *Monell* claim against Nassau County.  Plaintiff has not alleged any fact to show that any alleged violation of his constitutional rights, i.e., excessive force and deliberate indifference by any NCPD defendant, was the result of a "municipal policy or practice," as required when attempting to hold a municipality liable under Section 1983.  *See D'Alessandro v. City of New York*, 713 F. App'x 1, 5 (2d Cir. 2017) (summary order) (citing *Monell*, 436 U.S. at 658).  Without these facts, there is no basis for a *Monell* claim against the County.  Therefore, Plaintiff's Section 1983 claims against the NCPD and Nassau County District Attorney are dismissed.  *See, e.g.*, *Overhoff v. Ginsburg*

*Dev., L.L.C.*, 143 F. Supp. 2d 379, 389 (S.D.N.Y. 2001) (dismissing Section 1983 complaint against municipality due to plaintiff's failure to "allege that her constitutional rights were violated pursuant to any municipal policy or custom").

## CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment is denied as to Plaintiff's Fourth Amendment claim for excessive force and Fourteenth Amendment claim for deliberate indifference, both against Detective Dezelic, but granted as to all other claims challenged in Defendants' motion. Accordingly, Plaintiff's excessive force and deliberate indifference claims will proceed to trial against Detective Dezelic.[24] Defendants Nassau County District Attorney, the NCPD, Detective Gubelli, Detective Nicolic, and NCPD Detectives John/Jane Does are terminated from this action.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 30, 2024
        Brooklyn, New York

---

[24] However, the Court will wait to set a deadline for the submission of a Joint Pretrial Order until after the status of the case against Defendant C.O. Spatarella is determined. *See supra* note 1.