UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
DARIUS BURRIS,

                    Plaintiff,

          - against -

DETECTIVE DEZELIC, DETECTIVE
PULEO, SERGEANT REILLY, P.O.
MURPHY, C.O. SPATARELLA[1], CAPTAIN
JANE DOE, DETECTIVE JOHN DOE/JANE
DOE, NASSAU COUNTY DISTRICT
ATTORNEY CARRAO, DETECTIVE
NICOLE, N.Y.C. POLICE DEPT. PROPERTY
CLERK, and N.Y.C. DEPARTMENT OF
CORRECTIONS,

                    Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
14-CV-5540 (PKC) (ARL)

PAMELA K. CHEN, United States District Judge:

Plaintiff Darius Burris brings this *pro se* action, pursuant to 42 U.S.C. § 1983 ("Section 1983"), against, *inter alia*, Defendants Nassau County Police Department ("NCPD") Detective Dezelic, New York City Department of Corrections ("NYCDOC") Officer Spatarella, and two NYCDOC Jane/John Does ("NYCDOC Doe Officers"), alleging violations of Plaintiff's constitutional rights in connection with his arrest that occurred on April 25, 2014. Plaintiff specifically asserts claims of excessive force, deliberate indifference to medical needs, and deprivation of property. Presently before the Court are Defendants Dezelic's and Spatarella's motions for summary judgment seeking dismissal of the remaining claims against them from

---

[1] Defendant C.O. Spatarella was identified in Plaintiff's complaints as "C.O. Spattla," "C.O. Spatula," or "C.O. Spattula." (*See* Compl., Dkt. 1, at ECF 4; First Am. Compl. ("FAC"), Dkt. 108, at ECF 2; Second Am. Compl. ("SAC"), Dkt. 170, at ECF 1.) He was later identified as New York City Department of Corrections Officer Robert Spatarella. (*See* Dkt. 181, at 1.) Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

Plaintiff's SAC. For the reasons explained below, Defendant Dezelic's motion is denied in full and Defendant Spatarella's motion to dismiss Plaintiff's excessive force claim against him is denied, but his motion to dismiss Plaintiff's Section 1983 claims against the NYCDOC Doe Officers is granted.

## BACKGROUND[2]

### I. Relevant Alleged Facts

On April 25, 2014, Plaintiff was arrested upon being discharged from NYCDOC custody.[3] (*See* SAC, Dkt. 170, at ECF 2–3, 5.) At the time of the arrest, Plaintiff was wearing a back brace to treat his pre-existing fractured bones. (*See id.* at ECF 3.) Before Plaintiff was released from NYCDOC custody, Officer Spatarella[4] became verbally abusive towards Plaintiff and made "threats of bodily harm to the Plaintiff." (*Id.* at ECF 2.) Spattarella also "showed aggression" towards Plaintiff while he was being handcuffed by NCPD Detectives Jane Doe and John Doe. (*Id.* at ECF 3.) Plaintiff was then "slamm[ed]" to the ground by several unknown NYCDOC officers. (*Id.*) This caused Plaintiff to be in "excessive pain in [his] upper/lower back, arms[,] and face." (*Id.*)

NCPD detectives then "force[d]" Plaintiff into a car while his arms were stretched high behind his back with his wrists tightened. (*Id.*) Plaintiff was seated in the back passenger-side

---

[2] In reviewing this motion, the Court considers the record in the light most favorable to Plaintiff and resolves all ambiguities and draws all factual inferences in favor of Plaintiff "if there is a 'genuine' dispute as to those facts." *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

[3] Plaintiff claims that both NCPD and NYCDOC officers took part in his arrest. (*See* SAC, Dkt. 170, at ECF 2–3.)

[4] Plaintiff's filings, including the SAC here, frequently refers to "Spattula," whom the Court assumes is Officer Spatarella. (*See* Dkt. 181, at 1); *supra* n. 1.

2

seat, with Detective Dezelic seated directly in front of Plaintiff. (*Id.*) While in the car, Plaintiff "requested medical attention," at which point Detective Dezelic forced back the front passenger seat into Plaintiff. (*Id.*)[5] Detective Dezelic "refused to seek medical attention for . . . Plaintiff" and "did not order[] the co/conspirators to drive . . . Plaintiff to a local hospital[.]" (Dkt. 193, at ECF 7.)

Upon arriving at the NCPD precinct, Plaintiff requested medical attention again while being processed, but was left in "excessive pain" for several hours "until [the] process of [the] arrest was done." (SAC, Dkt. 170, at ECF 3.) After Plaintiff was processed, he was searched, and his back brace was removed. (*See id.*) Plaintiff's back brace "was never recovered." (*Id.*)

Plaintiff was subsequently transferred to Nassau University Medical Center ("NUMC") where he received treatment, after which he was taken into custody at the Nassau County Correctional Center ("NCCC"). (*See* SAC, Dkt. 170, at ECF 3–4.) While Plaintiff was incarcerated at the NCCC, he received medication and physical therapy for his back injury. (*Id.* at ECF 4.)

Plaintiff suffered several injuries arising from the arrest, including back pain, head trauma, and numbness of his fingers and wrist. (*Id.* at ECF 5.) He also suffered emotional injuries that were caused by Detectives Jane Doe and John Doe and Detective Dezelic. (*See id.* at ECF 4–5.)

## II. Procedural History

Plaintiff filed his original Complaint on September 17, 2014, asserting claims under 42 U.S.C. § 1983 ("Section 1983") for alleged violations of his constitutional rights by multiple defendants in connection with his arrests on two separate dates—December 27, 2013 and April

---

[5] The Court liberally construes this allegation as stating that Plaintiff posed no risk of escape or any other unlawful conduct. Defendants' motions do not argue otherwise.

25, 2014. (*See generally* Compl., Dkt. 1.) On March 29, 2017, the Court dismissed all of Plaintiff's claims in the original Complaint, except his excessive force claims against certain defendants stemming from his April 25, 2014 arrest, and granted him leave to file an amended complaint. *See Burris v. Nassau Cnty. Dist. Att'y*, No. 14-CV-5540 (JFB) (GRB), 2017 WL 9485714, *5–17 (E.D.N.Y. Jan. 12, 2017), *R. & R. adopted*, 2017 WL 1187709, at *2–3 (E.D.N.Y. Mar. 29, 2017). On April 17, 2017, Plaintiff filed his FAC, alleging excessive force, inadequate medical care, and deprivation of property relating to his April 25, 2014 arrest. (*See* FAC, Dkt. 108, at ECF 3–6.)

On January 21, 2021, the Court held a pre-motion conference ("PMC"), at which it granted Plaintiff permission to "file a Second Amended Complaint, providing additional facts, if any, regarding his remaining claims for excessive force and inadequate medical care." (*See* 01/21/2021 Min. Entry.) On April 20, 2021, Plaintiff filed the operative complaint. (SAC, Dkt. 170.) On May 12, 2021, Defendants filed a letter opposing Plaintiff's request to amend. (*See* Dkt. 171, at 1.) The Court construed Defendants' letter as a motion to dismiss (*see* 5/13/2021 Docket Order), which the Court denied on March 25, 2022 (*see* Dkt. 175, at 1, 11).

On November 7, 2022, Officer Spatarella moved to dismiss the excessive force claim against him. (Dkt. 189.) On September 30, 2023, the Court denied the motion. *Burris v. Nassau Cnty. Dist. Att'y*, No. 14-CV-5540 (PKC) (ARL), 2023 WL 6450398, at *1 (E.D.N.Y. Sep. 30, 2023).

On November 28, 2022, Detective Dezelic, along with other defendants, moved for summary judgment. (Dkt. 192.) On March 30, 2024, the Court denied the motion as to the excessive force and deliberate indifference claims against Defendant Dezelic, but granted it as to

4

all other claims against him. *Burris v. Nassau Cnty. Dist. Att'y*, No. 14-CV-5540 (PKC) (ARL), 2024 WL 1345296, at *1 (E.D.N.Y. Mar. 30, 2024).

On January 29, 2025, Defendant Dezelic filed a PMC request seeking leave to file a renewed motion for summary judgment in light of the intervening event of Plaintiff's deposition. (*See* Dkt. 246, at 1.) On February 5, 2025, Defendant Spatarella requested leave to file his first motion for summary judgment, on the same basis. (*See* Dkt. 247, at 2.) On February 6, 2025, the Court denied both PMC requests as "unnecessary" and set the briefing schedule for the instant motions. (02/06/2025 Dkt. Order.) On July 7, 2025, Defendants filed the instant motions for summary judgment and supporting papers, including their Rule 56.1 Statements. (*See* Mot. Summ. J., Dkt. 268; Mem. Supp. Mot. Summ. J., Dkt. 268-3 ("Dezelic Mem."); Mot. Summ. J., Dkt. 269; Mem. Supp. Mot. Summ. J. ("Spatarella Mem."), Dkt. 269-8.) As discussed next, although Plaintiff responded, his filings are deficient in certain respects.

## III. Plaintiff's Deficient Submissions

### A. Mislabeling of Plaintiff's Opposition

As a preliminary matter, the Court addresses Plaintiff's erroneous labeling of his response to Defendants Dezelic's and Spatarella's motions. Plaintiff filed his opposition papers denominated as a "Motion for Summary Judgment." (*See* Pl.'s Opp'n, Dkt. 263, at 1.) However, Plaintiff specifically states in his papers that he wants the Court to "dismiss [Defendants'] motion for summary judgment" and does not seek entry of judgment in his own favor. (*Id.*) "Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category." *Davis v. NYS Dep't of Corr. Attica Corr. Facility P.O. Box 149 Attica, N.Y. 14001*, 46 F. Supp. 3d 226, 237 (W.D.N.Y. 2014) (quoting *Castro v. United States*, 540 U.S. 375, 381 (2003)). "Courts should recharacterize a *pro se* litigant's motion where it is necessary to protect the *pro se* litigant's rights." *Id.* (citing

*Santiago v. Stamp*, 303 F. App'x 958, 961 (2d Cir. 2008) (summary order)). Here, the "*pro se* Plaintiff plainly did not understand the function of serving [his] own motion for summary judgment and apparently believed it was the appropriate mechanism for opposing [Defendants'] motion." *See id.* at 237–38. Thus, "[u]nder these circumstances and in the interest of protecting the rights of the *pro se* litigant, the Court construes Plaintiff's submission as [his] opposition to [Defendants'] motion[s] rather than as a cross-motion for summary judgment." *See id.* at 238.

### B. Lack of Local Rule 56 Counterstatement

Local Civil Rule ("Local Rule") 56.1 of this District requires, *inter alia*, that: (1) a party seeking summary judgment submit "a separate, short and concise [S]tatement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," and (2) the opposing party submit a counterstatement ("Counterstatement") with "correspondingly numbered paragraph[s] responding to each numbered paragraph in the statement of the moving party." E.D.N.Y. Loc. Civ. R. 56.1(a)–(b). "Each statement by the movant or opponent" in both the Rule 56.1 Statement and Counterstatement "must be followed by citation to evidence which would be admissible." E.D.N.Y. Loc. Civ. R. 56.1(d). If the opposing party fails to submit an appropriate Counterstatement controverting facts set forth in the movant's Local Rule 56.1 Statement by citing to admissible evidence, the Court may deem the moving party's statements of fact to be admitted. *See* E.D.N.Y. Loc. Civ. R. 56.1(c)–(d); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a [Local] Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.").

Here, both Defendants filed Rule 56.1 Statements, which in turn rely largely on Plaintiff's deposition. (*See* Dkt. 268-2; Dkt. 269-7.) Plaintiff did not file a Rule 56.1 Counterstatement, instead filing a declaration in which he complains that his deposition violated Federal Rule of Civil

Procedure ("Rule") 30 because he was not properly served with the transcript and thus lacked the opportunity to make any corrections before the instant motions were served on him. (*See* Pl.'s Opp'n, Dkt. 263, at 2–3.) Plaintiff's submission also includes a (mislabeled) "Rule 56.1(c)" statement that he "does not conced[e] to any of his given statement[s]" as reflected in the deposition transcript, and "reserve[s] his right to make proper corrections."[6] (*Id.* at 3.)

Plaintiff's filings do not meet Local Rule 56.1's requirements, since they do not contain "correspondingly numbered paragraph[s] responding to each numbered paragraph in the statement of the moving party." E.D.N.Y. Loc. Civ. R. 56.1(a)–(b). Thus, the Court has "discretion to consider any properly supported facts in Defendants' [Rule 56.1 Statement] admitted," *Thomas v. C.R. Bard, Inc.*, No. 20-CV-2738 (CS), 2022 WL 16748753, at *1 n.1 (S.D.N.Y. Nov. 7, 2022); *see also Vasquez v. Warren*, 630 F. Supp. 3d 524, 528 n.1 (S.D.N.Y. 2022) (noting that the court "could have regarded [the defendants'] version [of a Local Rule 56.1 Statement] as entirely undisputed" due to *pro se* plaintiff's failure to comply with Local Rule 56.1 even though the plaintiff had been given the required Local Rule 56.2 notice).

However, recognizing that *pro se* litigants are entitled to "special solicitude . . . when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court will in its discretion opt to "conduct an assiduous review of the record" for the facts when deciding the instant motion, *see Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) (citation omitted); *see also Houston v. Teamsters Loc. 210, Affiliated Health & Ins. Fund-Vacation Fringe Benefit Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 [S]tatement, the [c]ourt has independently reviewed the record

---

[6] Because the Court denies Defendants' motions insofar as they rely on Plaintiff's deposition, *see infra*, the Court need not decide the merits of Plaintiff's challenge at this juncture.

to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1."); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357 (ER), 2013 WL 5425587, at *2 (S.D.N.Y. Sep. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the *pro se*] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to make any submissions in opposition). "As to any facts not contained in Defendants' Local Rule [56.1] Statement, in light of the procedural posture of this case, the Court is 'required to resolve all ambiguities and draw all permissible factual inferences' in favor of Plaintiff." *See Maldonado v. Mandalaywala*, No. 17-CV-1303 (BKS) (TWD), 2020 WL 1159426, at *4 (N.D.N.Y. Feb. 12, 2020) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

**LEGAL STANDARD**

Summary judgment under Federal Rule of Civil Procedure ("Rule") 56 is appropriate where the parties' submissions, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (holding that the summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Loreley*, 13 F.4th at 259 (quoting *Anderson*, 477 U.S. at 248). "To present a 'genuine' issue of material fact sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Horror Inc. v. Miller*, 15 F.4th 232, 241 (2d Cir. 2021) (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden to demonstrate the absence of any genuine issues of material fact." *New York v. Mountain Tobacco Co.*, 942 F.3d 536, 541 (2d Cir. 2019). Once this

burden is met, the burden shifts to the nonmoving party to proffer evidence establishing the existence of a question of material fact that must be resolved at trial. *See Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252; *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 143 (2d Cir. 2013). That is, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citations omitted).

"[A]t the summary judgment stage, the district court is not permitted to make credibility determinations or weigh the evidence." *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021). It must "consider the record in the light most favorable to the non-movant" and "resolve all ambiguities and draw all factual inferences in favor of the non-movant 'if there is a "genuine" dispute as to those facts.'" *Loreley*, 13 F.4th at 259 (first citing *Jackson v. Fed. Exp.*, 766 F.3d 189, 192 (2d Cir. 2014); and then quoting *Scott*, 550 U.S. at 380). "[T]he district court may not properly consider the record in piecemeal fashion; rather, it must 'review all of the evidence in the record.'" *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

"When a *pro se* litigant is involved, the same standards for summary judgment apply, but 'the *pro se* litigant should be given special latitude in responding to a summary judgment motion.'" *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015) (quoting *Knowles v. N.Y.C. Dep't of Corr.*, 904 F. Supp. 217, 220 (S.D.N.Y. 1995)). In addition, courts must liberally construe the *pro se* party's pleadings "to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony*

*Recs.*, 351 F.3d 46, 50 (2d Cir. 2003) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)).

**DISCUSSION**

**I.    Plaintiff's Deliberate Indifference Claim Against Detective Dezelic**

Detective Dezelic moves for summary judgment on Plaintiff's deliberate indifference claim against him.  (*See* Mot. Summ. J., Dkt. 268; Dezelic Mem., Dkt. 268-3, at 1.)  As previously noted, this is the second time Dezelic has moved for summary judgment on this claim: the first time, the Court denied the motion, finding that "on the record taken in the light most favorable to Plaintiff, a reasonable jury could find that Detective Dezelic was deliberately indifferent to Plaintiff's serious medical needs during transportation back to the police station and his post-arrest processing." *Burris*, 2024 WL 1345296, at *13.  Dezelic seeks to have the Court revisit that ruling based on Plaintiff's deposition testimony.  (Dezelic Mem., Dkt. 268-3, at 1.)  However, as discussed below, the Court does not find this testimony warrants any change in the Court's prior ruling.

**A.    Legal Standard**

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "The Supreme Court [has] extended the protections for prisoners [under the Eighth Amendment] to civil detainees under the Due Process Clause of the Fourteenth Amendment, reasoning that persons in civil detention deserve at least as much protection as those who are criminally incarcerated." *Charles v. Orange Cnty.*, 925 F.3d 73, 82 (2d Cir. 2019) (citing *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982)).

"A pretrial detainee may establish a [Section] 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the

challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  Specifically, a pretrial detainee must satisfy a two-pronged test to prevail on a claim for deliberate indifference to serious medical needs.  *See Charles*, 925 F.3d at 86.  Under the first "objective prong,"[7] "the plaintiff must show that he actually did not receive adequate care and that the inadequacy in medical care was sufficiently serious." *Valdiviezo*, 752 F. App'x at 32 (citing *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)).  Specifically, the alleged deprivation must be sufficiently serious to constitute "a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles*, 925 F.3d at 86 (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).  To determine whether a medical need is "sufficiently serious to be cognizable as a basis for a constitutional claim for deprivation of medical care," courts "consider factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Id.* (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).  In particular, a serious medical condition may arise where "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Chance*, 143 F.3d at 702  (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)).  "In most cases, the actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm." *Charles*, 925 F.3d at 86 (quoting *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003)).  "When the basis for a plaintiff's claim 'is a temporary delay or

---

[7] The Court notes that "[f]or Fourteenth Amendment claims, [the Second Circuit] applies the same standard as the Eighth Amendment to determine whether an alleged action is objectively serious enough to be a constitutional violation." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (summary order).

interruption in the provision of otherwise adequate medical treatment,' [courts in this Circuit] examine[] whether the delay itself created a risk of harm. *Valdiviezo*, 752 F. App'x at 32 (citing *Smith*, 316 F.3d at 185–86). "In considering whether a delay caused a risk of harm, a court may consider '[t]he absence of adverse medical effects or demonstrable physical injury.'" *Id.* (quoting *Smith*, 316 F.3d at 187).

Under the second "subjective" prong, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Thus, "the 'subjective prong' (or '*mens rea* prong') of a deliberate indifference claim is defined objectively," *id.*, and "does not require proof of a malicious or callous state of mind," *Charles*, 925 F.3d at 86. Thus, under this standard, a detainee "can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Id.* at 87.

**B.      Application**

1.      <u>Objective Prong: Serious Medical Needs</u>

Detective Dezelic argues that Plaintiff has failed to satisfy the first prong because Plaintiff was taken to the hospital twice on the day of his arrest and has not "demonstrated any serious harm resulting from the alleged delay," nor "show[n] a sufficiently serious medical need that was left untreated." (*See* Dezelic Mem., Dkt. 268-3, at 3.) In this renewed summary judgment motion, Dezelic relies exclusively on Plaintiff's deposition, citing as support for this argument that "Plaintiff admits he was ultimately taken to the hospital twice for evaluation and treatment." (*Id.*)

In Detective Dezelic's first motion for summary judgment on this claim, the Court found, in reviewing Plaintiff's allegations, that "considering that Plaintiff was recovering from fractured bones at the time of the arrest and that the back brace that he was using to treat his prior injury was never returned to him, a reasonable jury may conclude that the new injuries inflicted upon Plaintiff during his arrest, in combination with his pre-existing injury, constituted a serious medical need." *Burris*, 2024 WL 1345296, at *11 (internal citations omitted). The Court additionally found that "[t]he reasonable implication of Plaintiff's allegations, read liberally, is that the delay of the treatment, in conjunction with the loss of his medical equipment, could have exacerbated his new and pre-existing injuries." *Id.*

In seeking to revisit the Court's ruling, Detective Dezelic relies on excerpts of Plaintiff's deposition testimony provided by the defense. However, this testimony is insufficient to warrant the Court changing its conclusions. Plaintiff's testimony re-affirms his allegations that his "back was hurting," that he was in "excruciating pain," that he had injuries on his face, arms, back, wrist, head, and that his lip or nose was bleeding. (*See* Pl.'s Dep. Tr., Dkt. 269-4, at 177:17–178:9, 179:22–180:6.) Plaintiff's testimony is also congruent with his allegations that his pleas were ignored or the responses delayed for hours, and that he was denied retrieval of his back brace. (*See id.* at 171:22–172:5, 178:4–13, 179:16–180:6, 181:4–6.) That Plaintiff eventually received treatment hours later does not preclude a claim of unreasonably *delayed* care. *See Jones v. Brunelle*, 164 F.3d 618 (2d Cir. 1998) (summary order) (making his observation). Plaintiff's testimony provides only further support for Plaintiff's claims that led to the Court's prior conclusion, and it certainly does not suffice for a grant of summary judgment in Dezelic's favor. *See Burris*, 2024 WL 1345296, at *11–12 (discussing how Plaintiff's claims regarding his back

pain, the removal and absence of his back brace, and delay in care preclude summary judgment on this prong).

In sum, the evidence before the Court, viewed in the light most favorable to Plaintiff, could still allow a reasonable jury to conclude that the objective prong of Plaintiff's deliberate indifference claim is satisfied.

2.         <u>Subjective Prong: Deliberate Indifference</u>

Detective Dezelic also argues that Plaintiff cannot satisfy the second prong, because Plaintiff "never directly attributes any refusal of medical care to Defendant Dezelic." (*See* Dezelic Mem., Dkt. 268-3, at 3–4.) Again, Dezelic points to Plaintiff's deposition, in which he claimed that Nassau County officers ignored his complaints, that he could not remember if an ambulance was called on his behalf, and "does not claim that Dezelic controlled when or whether medical personnel were called." (*See id.*) According to Dezelic, Plaintiff's only complaint about him was that Dezelic "reclined his seat in the transport vehicle." (*Id.*) Though acknowledging Plaintiff's testimony suggesting that Dezelic was motivated by retaliation against Plaintiff for a prior complaint, Dezelic describes those statements at the deposition as "speculati[ve]." (*See id.*; Pl.'s Dep. Tr., Dkt. 269-4, at 171:7–172:13, 173:4–10, 176:23–177:5.)

In reviewing this prong last time, the Court found that "a reasonable factfinder could find that Detective Dezelic knew or should have known that Plaintiff was in serious need of immediate medical care and yet denied him such care because he was deliberately indifferent to that need." *Burris*, 2024 WL 1345296, at *13. The Court concluded that "a reasonable jury could find that Detective Dezelic readily could have inferred from the back brace that Plaintiff had pre-existing injuries and thus Detective Dezelic should have known that delaying the provision of medical attention would cause a substantial risk to Plaintiff's health." *Id.* at *12. Additionally, the Court found that "Detective Dezelic's alleged decision to remove Plaintiff's medical equipment in itself

14

could constitute deliberate indifference to Plaintiff's medical needs, as it clearly could have resulted in more serious injury." *Id.*

Plaintiff's testimony is consistent with his prior allegations that the Court considered: as before, Plaintiff stated that Detective Dezelic was in the car when Plaintiff had visible injuries, was in excruciating pain, and made his requests for medical care. (Pl.'s Dep. Tr., Dkt. 269-4, at 171:22–172:5.) As before, Plaintiff stated that Dezelic nonetheless "forced" his seat back against Plaintiff in the police vehicle. (*See id.*) Although, at times, Plaintiff's deposition fails to specify which officer took or was responsible for taking certain actions, Plaintiff's testimony regarding Dezelic is entirely consistent with Plaintiff's prior claims that supported the Court's conclusion that summary judgment was unwarranted.

In fact, Plaintiff's testimony *bolsters* his claim that Detective Dezelic was deliberately indifferent to Plaintiff's injuries and pleas for help: according to Plaintiff, Dezelic had been involved in a prior case where Plaintiff claimed to have been sodomized by Nassau County police officers and, upon seeing Plaintiff at the April 25, 2014 arrest, Dezelic recognized Plaintiff, told officers to handcuff Plaintiff and that Plaintiff was "problematic," causing Plaintiff to be "freaked out." (*Id.* at 171:7–172:13, 173:4–10, 176:23–177:5.)

In sum, the Court still concludes that "a reasonable factfinder could find that Detective Dezelic knew or should have known that Plaintiff was in serious need of immediate medical care and yet denied him such care because he was deliberately indifferent to that need." *Burris*, 2024 WL 1345296, at *13.

The Court accordingly denies Detective Dezelic's renewed motion for summary judgment on Plaintiff's deliberate indifference claim.

15

**II.     Plaintiff's Cruel and Unusual Punishment Claim against Officer Spatarella**

Officer Spatarella moves for summary judgment against Plaintiff's claim of excessive force.  (*See* Spatarella Mem., Dkt. 269-8, at 1.)

**A.     Scope of the Motion and Claim**

As the Court has previously explained, excessive force claims can be brought under Section 1983 based on "either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments."  *Burris*, 2024 WL 1345296, at *5 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).  And as the Court further explained then, "[w]here . . . the excessive force claim arises in the context of an arrest . . . , it is most properly characterized as one invoking the protections of the Fourth Amendment."  *Id.* (quoting *Graham*, 490 U.S. at 394).

Here, Plaintiff's excessive force claim against Officer Spatarella arises out of the April 25, 2014 arrest.  Although this suggests that Plaintiff's claim arises under the Fourth Amendment, Plaintiff's operative complaint specifically alleges a violation of the Eighth Amendment, and Officer Spatarella argues for summary judgment on Plaintiff's excessive force claim based on the standards for the Eighth Amendment only.  (*See generally* Spatarella Mem., Dkt. 269-8, at 4–8.) Accordingly, the Court addresses only whether summary judgment is appropriate for a claim under Section 1983's protection against infringement on Plaintiff's Eighth Amendment rights.

**B.     Legal Standard**

1.     <u>Eighth Amendment</u>

The Eighth Amendment protects prison inmates against cruel and unusual punishment. U.S. Const. amend. VIII.  "To prevail on an Eighth Amendment excessive force claim, a plaintiff must prove 'two elements, one subjective and one objective.'" *Gunn v. Beschler*, No. 22-971, 2023

WL 2781295, at *2 (2d Cir. Apr. 5, 2023) (summary order) (quoting *Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016)).

For the first prong, Plaintiff must show that Officer Spatarella "acted with a subjectively 'sufficiently culpable state of mind.'" *Harris*, 818 F.3d at 63 (quoting *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015)). This prong may be satisfied with "a showing that the defendant 'had the necessary level of culpability, shown by actions characterized by "wantonness"' in light of the particular circumstances surrounding the challenged conduct." *Id.* (quoting *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009)). "For excessive force claims . . . the test for wantonness 'is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)); *see Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (explaining that the Eighth Amendment precludes "inflictions of pain . . . without penological justification" (internal quotation marks omitted)); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Courts examine factors including "the extent of the injury and the mental state of the defendant[;] . . . 'the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.'" *Harris*, 818 F.3d at 63–64 (quoting *Scott*, 344 F.3d at 291). Even where the evidence is "difficult to parse," the evidence of injury is "slight," and "the proof of excessive force [is] weak," a material question of fact as to the first prong may exist that precludes summary judgment. *See id.* at 65 (quoting *Wright*, 554 F.3d at 269).

For the second prong, Plaintiff "must allege that the conduct was objectively 'harmful enough' or 'sufficiently serious' to reach constitutional dimensions." *Id.* at 64 (quoting *Crawford*, 796 F.3d at 245). This is a context-specific inquiry, turning upon "contemporary standards of

decency." *Id.* (citation omitted). "'[D]e minimis uses of physical force' are insufficient to support a constitutional claim, 'provided that the use of force is not of a sort repugnant to the conscience of mankind.'" *Gunn*, 2023 WL 2781295, at *2 (quoting *Hudson*, 503 U.S. at 10). But as long as the amount of force used is not *de minimis*, "this factor is satisfied in the excessive force context even if the victim does not suffer serious, or significant injury." *Harris*, 818 F.3d at 64 (quoting *United States v. Walsh,* 194 F.3d 37, 50 (2d Cir. 1999)). And "certain actions, including the malicious use of force to cause harm, constitute Eighth Amendment violations *per se*. This result follows because when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Id.* (quoting *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999)). Thus, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 65 (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam)).

### 2.     Qualified Immunity

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jones v. Baran*, 798 F. Supp. 3d 197, 214 (D. Conn. 2025) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). At the summary judgment stage, qualified immunity defenses turns on "a two-part inquiry." *See Penree by Penree v. City of Utica, New York*, 694 F. App'x 30, 31 (2d Cir. 2017) (summary order) (citing *Tolan v. Cotton*, 527 U.S. 650, 655–56 (2014) (per curiam)). The first asks "whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." *Id.* (quoting *Tolan*, 527 U.S. at 655–56). The second asks "whether the right in question was clearly established at the time of the violation." *Id.* (quoting *Tolan*, 527 U.S. at 655–56).

With respect to the second prong, "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Radwan v. Manuel*, 55 F.4th 101, 114 (2d Cir. 2022) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). It is not necessary for "a case directly on point for a right to be clearly established; nevertheless, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Sloley v. VanBramer*, 945 F.3d 30, 40 (2d Cir. 2019) (internal quotation marks omitted) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). The Court looks to "whether (1) [the right] was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Radwan*, 55 F.4th at 114 (quoting *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011)).

### C. Application

Officer Spatarella argues that the Court should find summary judgment on this claim because (1) "Plaintiff has failed to show the force [used] was more than *de minimis*" based on the evidence offered, and (2) Officer Spatarella is entitled to qualified immunity. (*See* Spatarella Mem., Dkt. 269-8, at 1.) The Court disagrees.

Plaintiff alleges that Officer Spatarella "grabb[ed] [Plaintiff's] upper body and us[ed] his foot," in a wrestling-like move to "slam[] [Plaintiff] to the floor," "face first." (*See* Pl.'s Dep. Tr., Dkt. 269-4, at 92:3–11, 96:4–18; 97:11–17; SAC, Dkt. 170, at ECF 2–3; *see also* Pl.'s Dep. Tr., Dkt. 269-4, at 97:20–98:8 (suggesting that Officer Spatarella, along with other officers, then "jumped on top of [Plaintiff]").) Despite Plaintiff's back injury and wearing of the back brace, Officer Spatarella is also alleged to have "dragged" Plaintiff to NCPD's car with Plaintiff's handcuffed "hands high above [Plaintiff's] back," causing "excruciating pain," before "throw[ing]

[Plaintiff] in the car."[8]  (*See id.* at 99:3–19.)  Additionally, Plaintiff includes allegations relating to Officer Spatarella's state of mind, including that before the arrest, Officer Spatarella "mean mugged" Plaintiff and was "talking junk" to him.  (*See id.* at 91:10–12; *see also id.* at 81:17–87:9 (suggesting Officer Spatarella had animus against Plaintiff due to Plaintiff's prior complaint.)  At the same time, Plaintiff maintains, he did not present a risk of flight or in any way failed to comply with orders, and Defendants do not present facts to the contrary.  (*See id.* at 98:17–24.)  Finally, as noted above, Plaintiff alleges that the incident caused him several injuries, including back pain, head trauma, numbness of his fingers and wrist, and emotional injuries including difficulty sleeping.  (*See* SAC, Dkt. 170, at ECF 4–5; Pl.'s Dep. Tr., Dkt. 269-4, at 104:4–105:17, 145:13–22, 146:13–21, 180:1–6; *see also* Emergency Physician R., Dkt. 269-6, at ECF 3–8 (describing, *inter alia*, abrasion to Plaintiff's shoulder, tenderness at Plaintiff's back and shoulder, and severe pain to Plaintiff's back).)

Given the intensity of the force used and Plaintiff's compliance, the Court finds that these allegations would allow a reasonable jury to find that Officer Spatarella's use of force was unnecessary and excessive, served no penological purpose, was meant only to cause Plaintiff pain, and was thus maliciously and sadistically done to cause harm.  *See also Gunn*, 2023 WL 2781295, at *2 (finding summary judgment improper where detainee alleged to have been kicked in the shin while complying with orders).  Because this question exists and "the malicious use of force to cause harm[] constitute[s] Eighth Amendment violations *per se*," *Harris*, 818 F.3d at 64, the Court

---

[8] Officer Spatarella seeks to minimize these allegations by claiming that, even taking Plaintiff's version of events as true, "Plaintiff was taken to the ground while handcuffed while being transported out of jail."  (Spatarella Mem., Dkt. 269-8, at 7.)  That is a wholly inapt description of the allegations, dismissive of the very details giving rise to the questions of fact present here.

declines Officer Spatarella's invitation to inquire further as to the extent of Plaintiff's injuries vis-à-vis his pre-arrest back pain, (*see* Spatarella Mem., Dkt. 269-8, at 4–8).[9]

The Court also does not find that Officer Spatarella is entitled to qualified immunity at this stage. In line with the discussion above, controlling precedent clearly provides that prisoners have a constitutional right to be free from malicious and sadistic use of force by prison officials. *See Harris*, 818 F.3d at 64 ("[T]he malicious use of force to cause harm[] constitute[s] Eighth Amendment violations *per se*."); *Wilkins*, 559 U.S. at 37 ("When prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident." (quoting *Hudson*, 503 U.S. at 9)); *Whitley v. Albers*, 475 U.S. 312, 327 (1986) ("[T]he Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases such as this one, where the deliberate use of force is challenged as excessive and unjustified."); *see also Bell v. Saunders*, No. 9:20-CV-256 (BKS) (TWD), 2024 WL 5078136, at *8 (N.D.N.Y. Dec. 11, 2024) ("[A] prisoner's right to be free from . . . excessive force by prison officials is clearly an established constitutional right." (quoting *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008)). Because there remain material factual disputes as to the extent, reasonableness, and purpose of the force used by Officer Spatarella, a jury could reasonably find that Officer Spatarella violated a clearly

---

[9] The question of how much force was applied by Officer Spatarella will be informed, at least in part, by the extent of Plaintiff's injuries—about which the parties disagree. (*Compare* Spatarella Mem. Dkt. 269-8, at 12 (describing Plaintiff's fractured bones as the same condition Plaintiff had before the April 25, 2014 arrest), *with* Pl.'s Opp'n, Dkt. 263, at 10 (stating that the arrest worsened his injuries, which required additional treatment thereafter).) Because material questions exist as to the extent of Plaintiff's injuries, the Court denies Officer Spatarella's alternative request to limit Plaintiff's damages as premature. (*See* Spatarella Mem., Dkt. 269-8, at 9–13.)

established right, thereby precluding a grant of qualified immunity at this juncture. *See also Curry v. City of Syracuse*, 316 F.3d 324, 334 (2d Cir. 2003) ("Where the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." (quoting *Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002))); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 353–54 (N.D.N.Y. 2010) (finding denial of qualified immunity appropriate at the summary judgment stage in part because "case law within this circuit has clearly established that a prison official's use of force against an inmate for reasons that do not serve a penological purpose violate[] the inmate's constitutional rights").

Accordingly, summary judgment as to Plaintiff's Section 1983 claim against Officer Spatarella is denied.

### III. Plaintiff's Claims Against the NYCDOC Doe Officers

Officer Spatarella argues that the Court should dismiss the claims against the NYCDOC John and Jane Doe Officers. (*See* Spatarella Mem., Dkt. 269-8, at 1.) The Court agrees.

This is the second time in this case a Defendant has sought summary judgment as to Plaintiff's claims against unnamed officers. Previously, the Court dismissed Plaintiff's excessive force claims as to unnamed NCPD officers, reasoning that (1) Plaintiff had not met his duty to diligently litigate and identify the NCPD Doe Officers, (2) the statute of limitations for Plaintiff's claims had passed, and, (3) even if Plaintiff were able to identify the actual officers, Plaintiff could not enjoy the benefit of relating back to the date of the original filing. *See Burris*, 2024 WL 1345296, at *7.

All of the same reasoning applies to Plaintiff's Section 1983 claims against the NYCDOC Doe Officers. Here, Plaintiff has not met his duty to identify the NYCDOC Doe Officers. Plaintiff again admits that he has not identified the NYCDOC Doe Officers, and broadly claims only that

he has "made several efforts to seek the name of the [NYCDOC Doe] Defendants" and "relied upon good faith of the Defendants to ensure that they would include" the NYCDOC Doe Officers' names. (Pl.'s Opp'n, Dkt. 263, at 12.) But without more, the Court is unable to find that Plaintiff's failure to identify the NYCDOC Doe Officers is made in good faith. As before, there is nothing in the record showing that Plaintiff has taken any steps toward identifying or serving the unnamed officers during this lawsuit, despite ample time and opportunity, especially given the Court's reopening of the discovery period in light of Plaintiff's anticipated SAC. *See Burris*, 2024 WL 1345296, at *6–7. Furthermore, as previously discussed, the three-year statute of limitations for Plaintiff's Section 1983 claims in New York has passed, and "[i]f the Court were to allow Plaintiff's claim against these unidentified defendants to continue, they very likely would be prejudiced by Plaintiff's failure to identify them sooner." *See id.* (citations omitted).

Plaintiff again relies in part on the argument that it is Defendants' responsibility to identify the NYCDOC Doe Officers. (*See* Pl.'s Opp'n, Dkt. 263, at 12.) Plaintiff misunderstands this burden. As previously noted, while Plaintiff's *pro se* status entitles him to assistance from the Court in identifying the unnamed officers, the Court has already issued a *Valentin* order to assist him. *See Burris*, 2024 WL 1345296, at *7 (citing *Ceara v. Deacon*, 68 F. Supp. 3d 402, 404 n.1 (S.D.N.Y. 2014)); (Dkt. 7, at 1; 10/30/2014 Dkt. Order.) Beyond that, "Plaintiff's *pro se* status does not relieve him of diligent compliance with the relevant rules of procedural and substantive law in litigating this case" and he still "had a duty to diligently litigate his claims against the Doe [D]efendants, including a specific duty to identify, name, and serve them." *See Burris*, 2024 WL 1345296, at *7 (alteration in original) (first citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006); and then quoting *Boyd v. Doe #1*, No. 18-CV-1333 (TJM) (ATB), 2021 WL 7542409, at *25 (N.D.N.Y. Nov. 30, 2021)). Plaintiff has not met that burden.

Accordingly, Plaintiff's Section 1983 claims against the NYCDOC Doe Officers are dismissed.

**CONCLUSION**

For the reasons explained herein, Detective Dezelic's motion for summary judgment is denied in full and Officer Spatarella's motion for summary judgment is granted in part and denied in part. Accordingly, Plaintiff's deliberate indifference claim will proceed against Detective Dezelic, Plaintiff's excessive force claim will proceed against Officer Spatarella, and Plaintiff's Section 1983 claims against the NYCDOC Doe Officers are dismissed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 30, 2026
Brooklyn, New York